No. 71,478

MARION J. FUSARO, *Appellant,* v. FIRST FAMILY MORTGAGE CORPORATION, INC., a/k/a AMERICAS MORTGAGE SERVICING, INC.; LITTLE & COMPANY; and CLARENCE N. ARTZER AND CLARENCE G. ARTZER, d/b/a ARTZER PAINTING COMPANY, *Appellees.*

(897 P.2d 123)

Opinion filed June 2, 1995.

*Robert E. Hiatt,* of Hiatt & Hiatt, Chartered, of Topeka, argued the cause, and *Eugene W. Hiatt* and *John M. Cassidy,* of the same firm, were with him on the briefs for appellant.

*Steven R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause, and *Steven K. Johnson,* of the same firm, and *David J. Holdsworth,* of Romney & Condie, of Salt Lake City, Utah, were with him on the briefs for appellee Little & Company, and Clarence N. Artzer and Clarence G. Artzer, d/b/a Artzer Painting Company.

*R. Patrick Riordan,* of Reeder & Girard, P. A., of Topeka, argued the cause, and *Grant M. Glenn,* of the same firm, was with him on the brief for appellee First Family Mortgage Corporation, Inc.

*Bryan W. Smith,* of Fisher, Cavanaugh & Smith, of Topeka, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

DAVIS, J.: This case involves a homeowner's tort action for damages against a mortgagee based on claims of trespass, conversion, and intentional infliction of emotional distress. The homeowner appeals the trial court's denial of her motion to add a claim for punitive damages, the awarding of summary judgment to the defendants on her claim of outrage, the denial of her claim for aggravation of illness resulting from the defendants' trespass, and the denial of her discovery request. Finding no reversible error, we affirm.

Marion Fusaro's home was damaged by fire on October 7, 1988. Because of the fire damage, Fusaro moved out of her home and resided in an apartment until repairs were finished in May 1989.

First Family Mortgage Corporation, Inc., (First Family) held a note and mortgage on Fusaro's property. Since 1989, First Family had hired Little & Company to provide property inspection, preservation, maintenance, and other services for certain properties of interest to First Family. On March 21, 1989, First Family sent a work order form regarding Veterans' Administration property under foreclosure to Little & Company. The work order directed

Little & Company to do winter maintenance, change the lock, and secure the property owned by Fusaro.

Little & Company contacted Clarence G. Artzer and Son Painting Company (Artzer and Son), directing the company to winterize the property and change the lock. Artzer and Son had often done such jobs for Little & Company in the past. Artzer and Son had been advised by Little & Company that the Fusaro property was being foreclosed upon.

Clarence N. Artzer went to the Fusaro property and, from peering in the window, concluded the house was vacant. The garage door was missing; Artzer entered the garage and discovered some trash bags and boxes. He testified that he looked in some of the trash bags and found only trash and some smelly clothes. Believing the bags to be simply trash and to constitute a fire hazard, Artzer loaded them into his truck and hauled them to the dump.

Artzer stated that he had entered the attic through the garage and looked around and saw a "bunch of stuff" in the attic. He did not remove anything from the attic but did throw away an old wooden ladder which had been used to enter the attic.

Artzer entered Fusaro's home through an unlocked window. The house was empty but in good shape. Artzer began to winterize the house by servicing the water heater and shutting off the water service. He also removed the lock from the front door and took it to a locksmith to be rekeyed. He then put the rekeyed lock back on the door. Artzer testified that the only thing of value he found in the garage was a dining room table which he moved inside the house.

Artzer returned to the house the next day to complete the winterization. He encountered a man scraping paint from the home. The man told him that he was painting the house for a woman who owned it. Artzer left and notified Little & Company that the house was occupied. Little & Company told him to do nothing more on the house until further notice.

Clarence G. Artzer, owner of Artzer and Son, testified that he was in Arizona when the incident occurred. He acknowledged that an update letter from Little & Company told him not to remove

any personal property from the houses he winterized even if the items were in poor shape.

On October 6, 1989, Marion Fusaro filed an action against First Family, Little & Company, and Clarence N. Artzer for trespass, conversion, and intentional infliction of emotional distress, asking for damages in excess of $10,000. She alleged that the defendants and their agent intentionally, maliciously, and wrongfully entered her residence and disposed of her personal property.

In her deposition, Marion Fusaro claimed that Artzer and Son disposed of her personal items including clothing, boxes of shoes, comic books, a ladder, two Christmas trees, Christmas decorations, a golf bag, suitcases, games, tools, paint, a wooden shutter, a box of kitchen items, lawn furniture, a macrame, an Indian emblem, an elephant statue, a portable sewing machine, a portable record player, records, and other miscellaneous items which she claimed were in her garage. Fusaro stated that prior to the incident she suffered from depression and that the actions of First Family caused her great distress and made her even more depressed and anxious.

Fusaro's psychiatrist, Dr. Joseph Douglas, stated in his deposition that Fusaro had first come to see him in 1985. At that time she was suffering from her current depression and paranoid thinking. He felt that her illness could be controlled through medication. He testified that Fusaro was distressed initially about the fire at her house and a traumatic interview with the insurance adjuster. By January and early February, however, she was feeling better.

Fusaro went to see Dr. Douglas on March 29, 1989, and, although frustrated with the rebuilding work on her home, she seemed better at that time. However, when she went back to Dr. Douglas on April 11, 1989, after the property had been entered by Artzer and Son, she was suffering from increased paranoia and believed that her insurance adjuster had taken her belongings from her garage. She was better by the next week, but in June Fusaro's condition worsened, and she began to get very paranoid. She felt that the insurance adjuster was interfering in her life and that he was somehow harassing her and her family.

Dr. Douglas concluded that Fusaro suffered from a schizoaffective disorder with symptoms of recurrent depression and paranoid delusions. When asked about the effect of the loss of her personal property, Dr. Douglas opined that the loss of the property added to the stress of the situation and exacerbated her paranoid delusions. He noted that her paranoid symptoms came on soon after the incident. Insurance adjuster Artheray C. Rash acknowledged that he had mentioned to First Family in 1988 that Fusaro was seeing a counselor for medical problems.

Fusaro moved to amend her petition in order to claim punitive damages on the grounds that the defendants had acted in a willful, wanton, and malicious manner and were aware of her unusual susceptibility to emotional distress. Fusaro also filed a motion for summary judgment on the issue on whether a trespass had occurred. The district court granted summary judgment on the trespass claim but found that there was no clear and convincing evidence that she would probably prevail on a punitive damages claim and, therefore, denied her motion to amend.

Fusaro also sought to amend her complaint to include a cause of action for the tort of outrage. The district court found that Fusaro had failed to show the threshold requirement for the tort of outrage. Fusaro sought an interlocutory appeal. The Court of Appeals accepted an interlocutory appeal primarily to determine what standard a trial court should apply when considering a motion to amend a pleading to request punitive damages. See *Fusaro v. First Family Mtg. Corp.*, 17 Kan. App. 2d 730, 731, 843 P.2d 737 (1992).

The Court of Appeals held that the standard to be applied in such proceedings is whether a jury could reasonably find for the plaintiff on the issue of punitive damages; if so, then the amendment should be allowed. 17 Kan. App. 2d at 735. The Court of Appeals noted that this standard is the same as if a directed verdict or summary judgment motion had been filed by the defendant. 17 Kan. App. 2d at 735. Because it was not clear whether the district court in this case had determined whether the evidence would be clear and convincing to the court or whether it could be considered clear and convincing to a reasonable jury, the Court of Appeals

remanded the case to the trial court for determination of this issue. 17 Kan. App. 2d at 736.

On remand, the district court found that a reasonable jury could not find the evidence clear and convincing that Fusaro would be entitled to punitive damages. The trial court determined that there was no evidence which would support an inference that the defendants acted in a willful or wanton manner.

Fusaro also filed a motion before the district court seeking a determination that she could recover emotional damages for the aggravation of her mental illness resulting from trespass. The district court, however, determined that Fusaro should be denied recovery for aggravation of mental illness. It determined that there was no evidence that the alleged distress caused any physical injury to Fusaro or that there was sufficient evidence the trespass caused Fusaro's increased paranoid delusions. The trial court further determined that there was no evidence the defendants were acting in a willful or wanton manner to cause injury to Fusaro.

The parties entered into a stipulation wherein the defendants were found liable for trespass and conversion, and damages were awarded for these torts in the amount of $1,100. This constituted a final judgment, and Fusaro appeals.

## ISSUES PRESENTED

Fusaro raises five issues, the first of which is a question of first impression in Kansas. The issues raised are: (1) Whether, in ruling on the plaintiff's motion to amend petition to include a claim for punitive damages under K.S.A. 60-3703, the district court should have taken into consideration the burden of proof plaintiff will be required to meet at trial to prevail on the punitive damages claim; (2) whether the trial court erred in denying the plaintiff's motion to add a punitive damages claim; (3) whether the trial court erred in granting summary judgment to the defendants on the plaintiff's claim of outrage; (4) whether the court erred in denying Fusaro's claim of aggravation of mental illness resulting from trespass; and (5) whether the court erred in refusing to grant Fusaro's discovery requests.

## (1) STANDARD FOR TRIAL COURT ON REQUEST TO AMEND TO INCLUDE A PUNITIVE DAMAGE CLAIM

In Kansas, it is no longer possible for a plaintiff to proceed with a claim for punitive damages without first applying to the trial court for permission to amend to include a claim for punitive damages. K.S.A. 60-3703 provides:

"No tort claim or reference to a tort claim for punitive damages shall be included in a petition or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. *The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim pursuant to K.S.A. 60-209, and amendments thereto.* (Emphasis added.)

At trial, a plaintiff seeking punitive damages "shall have the burden of proving, by clear and convincing evidence, . . . that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. 60-3701(c). The question is whether the trial court must, in determining the existence of a "probability that plaintiff will prevail on the claim" take into account the "clear and convincing" standard of proof the plaintiff will be required to meet at the trial of the case.

We answer the above question in the affirmative. K.S.A. 60-3703 requires the plaintiff to establish that there is a probability that plaintiff will prevail on his or her punitive claim at trial before the court will permit an amendment to include a claim for punitive damages. Probability is a term familiar to tort law. It means more likely than not and, when applied to K.S.A. 60-3703, means that it is more likely than not that the plaintiff will prevail on a claim of punitive damages upon trial of the case. Because the standard of proof required upon trial is "clear and convincing," the trial court exercising its statutory duties under K.S.A. 60-3703 must give consideration to this standard in determining the probability of recovery.

Neither the trial court, in the first instance, nor an appellate court when reviewing the trial court's determination under K.S.A. 60-3703, may ignore the fact that the burden of the plaintiff in a

claim for punitive damages at trial is proof by clear and convincing evidence. The initial question for the trial court when considering all the evidence is whether "plaintiff has established that there is a probability [considering that the burden on plaintiff is proof by clear and convincing evidence] that the plaintiff will prevail on the claim pursuant to K.S.A. 60-209, and amendments thereto." K.S.A. 60-3703.

In making this threshold determination, the trial court is not to usurp the role of the jury. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts remain jury functions. The trial court is to consider the evidence presented in the opposing affidavits as well as other evidence in a light most favorable to the party moving for the amendment, and if the evidence is of sufficient caliber and quality to allow a rational factfinder to find that the defendant acted towards the plaintiff with willful conduct, wanton conduct, fraud, or malice, the trial court shall allow the amendment. This is another way of saying that amendment will be allowed when plaintiff has established that there is a probability that plaintiff will prevail on a punitive claim pursuant to K.S.A. 60-209, and amendments thereto.

Both parties and the Court of Appeals suggest that the standard to be applied is similar to the standard that a trial court would apply when determining whether to grant a summary judgment or a directed verdict. The defendants then urge us to apply the doctrine espoused in the case of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986), a libel case involving a public figure, wherein the United States Supreme Court stated that "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial upon the merits."

The plaintiff would have us limit *Anderson v. Liberty Lobby, Inc.*, to the facts of that case, contending that it should be limited to libel cases. In support of her position she cites the case of *Baumann v. Excel Industries, Inc.*, 17 Kan. App. 2d 807, 845 P.2d 65 (1993), *rev. denied* 252 Kan. 1091 (1993), wherein the Court found that the application of the clear and convincing standard at the

summary judgment stage is unique to libel cases because First Amendment rights are at issue. 17 Kan. App. 2d at 815. Moreover, plaintiff urges us to resolve what she claims is a split between panels of the Court of Appeals based upon the Court of Appeals' treatment in the past of this case, *Fusaro v. First Family Mtg. Corp.*, 17 Kan. App. 2d 730. Fusaro contends that the two cases create a conflict in their treatment and application of the United States Supreme Court case of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242. We disagree.

*Anderson v. Liberty Lobby* and *Baumann* involved summary judgments. This case, like *Fusaro*, does not involve summary judgment. In this case, we are not dealing with a motion for summary judgment or a motion for directed verdict. We deal instead with the provisions of K.S.A. 60-3703. The question before the trial court becomes whether the evidence as disclosed from the affidavits, given the standard the plaintiff is required to meet in order to prevail on a punitive damages claim, is sufficient as a matter of law to support the plaintiff's claim for punitive damages under the provisions of K.S.A. 60-3703. A significant similarity between K.S.A. 60-3703 and the trial court's approach to summary judgment or directed verdict is that under K.S.A. 60-3703 the trial court must view the evidence as disclosed from the affidavits in a light most favorable to the party moving for amendment.

The resolution of the issue raised in this case does not require us to address what the plaintiff alleges is a conflict between panels of the Court of Appeals. The decision in this case is a narrow one. It gives guidance to trial courts in determining whether a plaintiff should be allowed to amend a petition to include a claim for punitive damages under K.S.A. 60-3703.

## (2) EVIDENCE IN SUPPORT OF MOTION TO AMEND

Having determined what standard is to be applied by the district court, we now turn to the plaintiff's contention that the evidence, when viewed in light of the standard adopted, establishes the plaintiff's right to amend and to include a count for punitive damages.

Under K.S.A. 60-3703, the decision whether to permit plaintiff to amend is discretionary in that the statute provides that the court *may* allow the filing of an amended petition claiming punitive damages. Thus, our standard of review is one of abuse of discretion. " 'Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court.' " *In re Marriage of Cray*, 254 Kan. 376, 387, 867 P.2d 291 (1994) (quoting *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 [1973]).

We conclude that the trial court did not abuse its discretion in denying plaintiff's motion to amend her pleading to include a count for punitive damages. Our review of the record discloses that substantial competent evidence supports the trial court's denial. In arriving at its decision, the trial court opined as follows:

"It is the opinion of this court that plaintiff has failed to meet the burden required to amend a petition for punitive damages. Plaintiff simply relies on conclusory allegations in support of her motion. Plaintiff alleges that the Defendants acted 'intentionally, maliciously, and wrongfully' in trespassing on her real property, 'trashing' her personal property, and in draining the water heater, shutting off the water to the house, and changing the locks. However, Plaintiff fails to direct the Court to any evidence in the record that would support an inference that Defendants acted with a 'designed purpose,' 'reckless disregard,' or an 'intent to do a harmful act.' "

While there may be conflicting evidence, with some evidence supporting the contentions of Fusaro, we do not resolve such conflicts. Our responsibility is to determine whether there is substantial competent evidence supporting the trial court's findings. We conclude that there is such evidence and no abuse of discretion by the trial court.

## (3) SUMMARY JUDGMENT ON CLAIM OF OUTRAGE

Fusaro argues that the district court erred in granting summary judgment in favor of the defendants on her claim of outrage. According to Fusaro, a reasonable jury might find that the conduct of the defendants, coupled with the infliction of emotional distress to her, was extreme and outrageous.

"Summary judgment may be granted when the evidence shows no liability as a matter of law and where the central facts are not in dispute. [Citation omitted.] When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. [Citation omitted.] In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. An issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact could not affect the judgment, it does not present a genuine issue of material fact. [Citation omitted.]" *Knudsen v. Kansas Gas & Electric Co.*, 248 Kan. 469, 483, 807 P.2d 71 (1991).

When the tort of outrage is asserted, two threshold requirements must be met. The trial court must determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery and (2) whether the emotional distress suffered by the plaintiff is of such extreme degree the law must intervene because no reasonable person should be expected to endure it. *Taiwo v. Vu*, 249 Kan. 585, Syl. ¶ 4, 822 P.2d 1024 (1991).

In order for conduct to be deemed sufficient to support the tort of outrage, it must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. 249 Kan. at 592. The classic test is that liability may be found to exist when the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, "Outrageous!" See 249 Kan. at 592.

The district court found that Fusaro had failed to meet the two threshold requirements for the tort of outrage. It determined that there was no evidence the actions of the defendants caused Fusaro's emotional distress or that the defendants' actions were committed intentionally or in reckless disregard of her mental state. We agree with the trial court's determination that the defendants' actions were not so extreme in degree as to be regarded as utterly atrocious or intolerable in a civilized society.

## (4) CLAIM OF AGGRAVATION OF MENTAL ILLNESS RESULTING FROM THE TRESPASS

Fusaro contends that the district court erred in holding that she could not recover emotional damages for the aggravation of her mental illness as a result of the defendants' trespass. She argues that the general rule that a plaintiff is not entitled to recover damages for mental suffering in the absence of physical injury does not apply because the defendants' acts were wanton or willful.

There is some disagreement over the standard of review. Fusaro argues that we must review the trial court ruling as we would a summary judgment; that is, we must consider the facts in a light most favorable to Fusaro. The defendants, on the other hand, argue that the question is one of law subject to de novo review. The district court considered the question of whether Fusaro could recover damages for aggravation of a mental illness in light of the facts and, therefore, we review the ruling of the trial court as we would review a summary judgment.

Generally, there can be no recovery for emotional distress caused by negligence unless accompanied by or resulting in physical injury. *Humes v. Clinton*, 246 Kan. 590, 598, 792 P.2d 1032 (1990). This rule does not apply where the injurious conduct was willful or wanton. *Bowman v. Doherty*, 235 Kan. 870, 877, 686 P.2d 112 (1984). The trial court concluded that the actions of the defendants were neither willful or wanton.

Fusaro also argues that the defendants' actions in the trespass aggravated her preexisting schizoaffective disorder and that she is entitled to advance her claim based upon an aggravation of a preexisting injury. The trial court found that any damage done to Fusaro was emotional, not physical, and absent any physical injury, recovery was barred. We agree.

Aggravation of a preexisting injury is compensable in a personal injury action. *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 469, 856 P.2d 906 (1993). The question is whether Fusaro's schizoaffective disorder is a physical condition such that its aggravation constitutes a physical injury.

The defendants cite a host of cases which they claim stand for the proposition that aggravation of preexisting mental illness is a

mental, not a physical injury. Although for reasons peculiar to the laws of particular states, recovery was granted in these cases, they stand for the proposition that aggravation of a mental disorder is not classified as a physical injury. See *Stoleson v. United States*, 708 F.2d 1217, 1221 (5th Cir. 1983) (holding plaintiff's action for damages for hypochondria was not barred because it resulted from an actual physical injury); *Steinhauser v. Hertz Corporation*, 421 F.2d 1169, 1170 n.1 (2d Cir. 1970) (holding plaintiff's action for the infliction of schizophrenia was not barred even though no physical injury occurred, because New York had abandoned physical injury rule).

In Kansas, where the aggravation of a mental disorder is not caused by physical injury but instead merely by damage to property, a plaintiff may not recover. In *Hopkins v. State*, 237 Kan. 601, 613, 702 P.2d 311 (1985), we stated: "Some courts in other jurisdictions have allowed recovery for emotional distress where there has been direct injury to property. . . . We, however, have never allowed recovery under such circumstances."

The damages claimed by Fusaro are akin to those suffered as the result of infliction of emotional distress. Fusaro suffered no physical injury as a result of the defendants' actions, but simply an aggravation of a recurrent mental condition. There is no evidence that her mental illness was caused in any way by a physical impact. Based on these circumstances, the aggravation of a mental condition does not constitute a physical injury. Therefore, under the law in Kansas as stated in *Hume*, Fusaro cannot recover and the district court did not err in so determining.

## (5) DENIAL OF DISCOVERY REQUEST

Fusaro argues that the district court erred in failing to grant her discovery requests concerning prior instances of defendants trespassing on property of other mortgagors. According to Fusaro, the district court's ruling that such discovery was only relevant to the question of punitive damages and, because the amendment to claim punitive damages was not allowed, no discovery should be allowed, stands as a "paradigm of circular logic and abuse of discretion."

Control of discovery is entrusted to the sound discretion of the trial court, and orders concerning discovery will not be disturbed on appeal absent an abuse of discretion. *Manhattan Mall Co. v. Shult*, 254 Kan. 253, 256, 864 P.2d 1136 (1993). Discretion is abused when no reasonable person would take the view of the trial court. *Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 262, 815 P.2d 550 (1991).

Fusaro's argument hinges upon discovery requests it made in 1990. With these requests, Fusaro sought to discover whether First Family had directed Little & Company to enter other mortgaged property prior to the foreclosure action and without court order. Fusaro provided First Family with copies of a computer-generated list of Little & Company's job work orders. First Family answered that it was unable to identify any of its jobs from the information provided on the list of work orders. Little & Company objected to the questions as irrelevant and unduly burdensome.

A restatement of the timeline involved is important to the resolution of this issue. In November 1990, Fusaro filed her motion to amend her petition to allow punitive damages. On April 1, 1991, the court denied this motion. Fusaro then filed a motion to reconsider, and on May 8, 1991, Fusaro filed a motion to compel the defendants to answer her discovery questions. On August 6, 1991, the district court denied her motion to reconsider and ruled that in light of its earlier refusal to allow Fusaro to amend her claim, the information she sought by her motion to compel was no longer relevant.

Later, the case was remanded by the Court of Appeals for reconsideration of Fusaro's motion to amend. *Fusaro v. First Family Mtg. Corp.*, 17 Kan. App. 2d at 736. The district court again denied Fusaro's motion to amend.

Any evidence is discoverable if it is relevant to the subject matter of the cause of action and not privileged. *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.*, 250 Kan. 54, 59, 824 P.2d 933 (1992). Fusaro argues that evidence related to the practice of the defendants in entering other property without permission is relevant to show intent in order to prove punitive damages. Little & Company, however, argue that the evidence is

not relevant to the defendants' intent to cause harm to Fusaro but instead only to their intent to dispossess Fusaro and other mortgagors.

Fusaro is correct that any evidence the defendants entered her property intending to dispossess her would be relevant to the issue of punitive damages because, even though the defendants may not have had an intent to harm her, they might have had an intent to interfere with her rights to the property or at the very least been indifferent as to whether that damage would have occurred. Under normal circumstances, the information would be discoverable.

The problem with Fusaro's argument in this case is that she filed her motion to amend prior to her motion to compel discovery. The trial court correctly ruled on the motion to amend based on the evidence presented by Fusaro. Once that motion was denied, evidence on the issue of punitive damages was no longer relevant. The Court of Appeals' remand was simply for reconsideration of the motion in light of the Court of Appeals' ruling on the standard of review.

If Fusaro is caught in a "Catch-22" situation, it is one of her own making. She determined the proper time to file her motion to amend and took the risk that her evidence in support of the motion would be deemed insufficient. Because Fusaro's motion to amend was denied, the evidence she sought through her motion to compel was not relevant, and the district court did not abuse its discretion in denying the motion.

Affirmed.

LOCKETT, J., concurring and dissenting: I concur with the majority in the result. I dissent from the majority's determination that under K.S.A. 60-3703 the district court *may* allow an amended pleading if plaintiff is able to establish there is a probability that the party will prevail on the punitive damages claim at trial. I also dissent from the majority's conclusion that because K.S.A. 60-3703 states that the trial court *may* allow the filing of an amended petition claiming punitive damages, the appellate court's standard of review is whether the trial court abused its discretion.

K.S.A. 60-3703 provides:

"No tort claim or reference to a tort claim for punitive damages shall be included in a petition or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. *The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim pursuant to K.S.A. 60-209, and amendments thereto.*" (Emphasis added.)

K.S.A. 60-209(g), which sets out the requirement for pleading special damages, states:

"When items of special damages are claimed, their nature shall be specifically stated. In actions where exemplary or punitive damages are recoverable, the amended petition shall not state a dollar amount for damages sought to be recovered but shall state whether the amount of damages sought to be recovered is in excess or not in excess of $10,000."

First, the majority observes that K.S.A. 60-3703 requires that before a party *may include a claim for punitive damages* in any tort claim the party must first obtain a court order allowing an amended pleading that includes a claim for punitive damages. The majority finds that the district court *may allow* such an amended pleading *if a party is able to establish there is a probability that the party will prevail on the punitive damages claim at trial*. It concludes that under K.S.A. 60-3703, *the decision whether to permit the plaintiff to amend is discretionary* in that the statute provides that the court *may* allow the filing of an amended petition claiming punitive damages. The majority also asserts the standard of review on appeal is one of abuse of discretion.

After stating that the decision of whether to amend the pleadings is "discretionary" and the court "may allow the filing of an amended pleading claiming punitive damages," the majority then confuses its analysis of K.S.A. 60-3703 by contradicting itself in stating that after making the threshold determination, the "trial court shall allow the amendment." It notes that in determining whether the party is able to establish a probability that the party will prevail on the punitive damages claim, the trial court is to consider the evidence presented in the opposing affidavits as well as other evidence in a light most favorable to the party moving for

the amendment. It states that if the evidence is of sufficient caliber and quality to allow a rational factfinder to find that the defendant acted towards the plaintiff with willful conduct, wanton conduct, fraud, or malice, *the trial court shall allow the amendment.* It concludes this analysis by stating: "This is another way of saying that amendment will be allowed when plaintiff has established that there is a probability that plaintiff will prevail on a punitive claim pursuant to K.S.A. 60-209, and amendments thereto."

The purpose of K.S.A. 60-209(g) is to put a party on notice that a claim for special damages is being asserted so that the party defending the assessment of punitive damages may investigate details of the claim by discovery processes. K.S.A. 60-3703, as a prerequisite to the inclusion of a tort claim for punitive damages in the petition or other pleading, requires the party seeking the amendment to obtain an order from the district judge allowing the amended pleading. K.S.A. 60-3703, which states the court may allow an amended pleading, was enacted to exclude the party claiming punitive damages on a tort claim from the right to amend the pleading as a matter of course under K.S.A. 60-215(a).

Before allowing an amended pleading to include a claim for punitive damages in a tort claim, K.S.A. 60-3703 requires the trial court to make a two-step analysis. The trial court must first determine if the motion to amend is timely filed and complies with the requirement of K.S.A 60-209 for pleading special matters. If the motion is timely filed and complies with 60-209, the trial court then considers the supporting and opposing affidavits as well as other evidence in a light most favorable to the party requesting the amendment to determine if the party requesting punitive damages has established by clear and convincing evidence that there is a probability the moving party will prevail on the claim.

If the motion is timely filed and the evidence is clear and convincing that there is a probability the. moving party will prevail on the claim, the trial judge does not have discretion to allow or not to allow the amendment; the trial judge must allow the amendment. When reviewing the trial court's decision to allow or not to allow the amendment for punitive damages, an appellate court will give great deference to the factual findings of the trial court. The

ultimate determination of whether the amendment was proper under K.S.A. 60-3703 is not a question of whether the district judge abused his or her discretion, but is a legal question requiring independent appellate determination.

HOLMES, C.J. and ABBOTT, J., join in the foregoing concurring and dissenting opinion.