No. 79,238

JOHN T. CALVER and KATHRYN M. CALVER, *Appellants*, v. MARY L. HINSON and GUNTER EXTERMINATING CO., *Appellees*.

(982 P.2d 970)

Opinion filed May 28, 1999.

*James R. Orr*, of Westwood, argued the cause and was on the brief for appellants.

*Daniel J. Markowitz*, of Alig, Markowitz & Michaels, of Overland Park, argued the cause, and *David R. Alig*, of the same firm, was with him on the brief for appellee Mary L. Hinson.

*Richard T. Merker*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellee Gunter Exterminating Co.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by plaintiffs John T. Calver and Kathryn M. Calver from an adverse judgment concerning termite damage to a house they purchased from Mary L. Hinson. Defendants are Hinson and Gunter Exterminating Co. (Gunter).

The Calvers raise seven issues on appeal. They claim the trial court erred by entering directed verdicts on all negligence claims, the issue of fraud, and the Kansas Consumer Protection Act (KCPA), and by not granting the Calvers' motion for partial summary judgment under the KCPA. In addition, the Calvers claim the trial court erred in granting a judgment notwithstanding the verdict, based on the interrogatory answers; by denying the Calvers' motion to amend the pleadings to add punitive damages; and by permitting counsel for Gunter to examine the Calvers' expert witness (because of a prior representation).

The Calvers signed a contract to purchase a house in Leawood, Kansas, from Hinson in December 1989. Hinson furnished the Calvers a disclosure statement, disclosing that the property had been treated for termites by Gunter pursuant to a contract which Hinson had with Gunter.

Hinson and Kathryn Calver discussed termites prior to the closing. During this conversation, Hinson mentioned that when the house was treated in 1986, there had been some minor damage under the front door which had been repaired.

Paragraph F of the residential real estate sale contract includes the following language:

"If there is evidence of damage to the Property as a result of any infestation, SELLER agrees to make or pay for repairs in an amount not exceeding the amount stated in Paragraph 8. Any repairs shall be made in a workmanlike manner, with good quality materials. If the cost of repairs exceeds the amount specified in Paragraph 8, BUYER may cancel this Contract. *The inspection, treatment and*

*repairs, if necessary shall be completed no earlier than thirty (30) days before the Closing Date.* SELLER agrees that BUYER or BUYER'S representative may inspect any repairs before the Closing Date."

The contract between the Calvers and Hinson is dated December 1, 1989. Jay Besheer, of Gunter, inspected the house and gave a termite inspection report prior to closing. The cost of the report was $40. The sale was closed on January 10, 1990. The termite treatment warranty was transferred to the Calvers and the house was inspected each year for $40 per year.

In 1994, the Calvers were remodeling the house and discovered termite damage. The parties agree that all the termite damage occurred prior to the 1986 treatment and there has been no evidence of live termites after 1986.

In 1994, the Calvers contacted Gunter and were told that the property had been treated in 1986 by Gunter and that "it had extensive termite damage." Gunter faxed the 1986 treatment proposal to the Calvers. The 1986 treatment proposal was also written by Besheer and was similar to the one contained in the 1989 real estate inspection report.

Robert Batman, the expert for the Calvers, testified there was visible evidence of termite damage in the basement, shed, and garage area. The Calvers claim Hinson purposely covered up widespread damage by painting, placing black tape over termite-damaged sheetrock in the garage, and carpeting the hardwood floors. Batman testified that although Gunter would not have known about the damage that was covered by carpet or paint, there were numerous examples of termite damage in other areas of the house, such as the basement, which would have been visible to a professional in 1989.

After the Calvers discovered the damage, John Bara, a contractor with experience in repairing termite-damaged property, evaluated the property for structural damage. Bara's testimony was that "the sill plate around the house, which supports all the joists which support all the walls of the house, is extremely compromised." Bara gave the Calvers an estimate of $42,820 to fix the visible damage and to determine the existence of other damage.

The sellers disclosure statement provided by Hinson to the Calvers contains the following "BUYERS ACKNOWLEDGMENT AND AGREEMENT" in bold lettering just above the signature line:

"1. I HAVE CAREFULLY INSPECTED THE PROPERTY. SUBJECT TO ANY INSPECTIONS ALLOWED UNDER MY CONTRACT WITH SELLER, I AGREE TO PURCHASE THE PROPERTY IN ITS PRESENT CONDITION ONLY, WITHOUT WARRANTIES OR GUARANTEES OF ANY KIND BY SELLER OR ANY REALTOR CONCERNING THE CONDITION OR VALUE OF THE PROPERTY.

"2. I AGREE TO VERIFY ANY OF THE ABOVE INFORMATION THAT IS IMPORTANT TO ME BY AN INDEPENDENT INVESTIGATION OF MY OWN. I HAVE BEEN ADVISED TO HAVE THE PROPERTY EXAMINED BY PROFESSIONAL INSPECTORS.

"3. I ACKNOWLEDGE THAT NEITHER SELLER NOR ANY REALTOR INVOLVED IN THIS TRANSACTION IS AN EXPERT AT DETECTING OR REPAIRING PHYSICAL DEFECTS IN THE PROPERTY. I STATE THAT NO IMPORTANT REPRESENTATIONS CONCERNING THE CONDITION OF THE PROPERTY ARE BEING RELIED UPON BY ME EXCEPT AS DISCLOSED ABOVE OR AS FULLY SET FORTH AS FOLLOWS:"

The parties left blank the line about important representations concerning the condition of the property.

Gunter pointed out the wood-destroying insect report stated:

"NOTICE: THIS IS NOT A STRUCTURAL DAMAGE REPORT. It is a report of the visible evidence of wood-destroying insects based upon a careful inspection of readily accessible areas only, on the date of inspection. No inspection has been made in areas which are obstructed or inaccessible, e.g. areas behind dirt fills, finished walls, ceilings, rugs, furniture, pictures and appliances, and no comment can be made as to the presence or absence of wood-destroying insects in any obstructed or inaccessible areas.

"This report is not a guarantee that infestation or damage does or does not exist, nor is it a guarantee that infestation or damage will not occur. If evidence of wood-destroying insects is noted herein, it is recommended that the property owner, or interested parties contact a qualified expert in the construction or building trades to determine the existence, nature and extent of structural damage to the inspected property. There could possibly be extensive damage behind walls and in inaccessible areas which cannot be detected by visual inspection. Such damage, if any, whether detected or not, is not the responsibility of Gunter Exterminating Company.

"The inspection was conducted in accordance with the procedures of the Kansas and Missouri Pest Control Associations."

Gunter claims that although it prepared a report in 1986 which indicated the full extent of the termite damage, Gunter did not know Hinson had not provided the 1986 report or any information regarding the extent of damage to the Calvers.

The trial began on April 7, 1997. The Calvers finished presenting their evidence on April 11, 1997, and Hinson moved for directed verdict. The court granted Hinson's motion as to the claims based in negligence because such claims were "subsumed in the contract between the parties and barred by the doctrine of subsumption." The trial court denied Hinson's motion for directed verdict as to the Calvers' claims of fraud and the issue of punitive damages.

Gunter also moved for directed verdict on all claims filed against it, and the court granted Gunter's motion as to all claims. The court ruled the claims based in negligence against Gunter were "subsumed in the warranty given to [the Calvers] and barred by the doctrine of subsumption." In its amended journal entry, the trial court stated that the claims against Gunter, based on the KCPA were

"barred by the applicable statute of limitations and, further, no evidence was shown of any false or untrue statement made by [Gunter]. As to claims based on fraud, the Court found that [the Calvers] failed to present sufficient evidence to make a *prima facie* case against [Gunter] based on fraud and the Court additionally found that [the Calvers] failed to present sufficient evidence that [Gunter] made any false or untrue statements."

On April 15, 1997, the jury was given a set of jury instructions, written interrogatories, and a general verdict form. Although the jury assessed damages of $20,000 in favor of the Calvers, finding Hinson had acted fraudulently, willfully, or maliciously, the trial court entered a judgment notwithstanding the verdict and stated:

"[T]he Court questioned the jury through its presiding juror regarding the meaning of its responses to the Interrogatory Number 3 and the Court determined that the answer was intended to bar a further proceeding pertaining to punitive damages. Neither [the Calvers] nor [Hinson] requested that jurors be polled individually. Thereafter, being satisfied that the responses and verdict of the jury were consistent, harmonious and complete, the Court accepted the jury's responses to the written interrogatories and its general verdict. . . .

" . . . [Hinson] again moved for directed verdict as to all fraud claims raised by [the Calvers] against her, based on the jury's response to written Interrogatory

Number 1 and the applicable statute of limitations. Following argument, the Court, pursuant to K.S.A. 60-250, granted [Hinson's] motion, dismissed [the Calvers'] fraud claims against her notwithstanding the jury's verdict and ordered that judgment be entered in favor of [Hinson] and against [the Calvers] on all fraud claims."

The Calvers filed this appeal, and this court has jurisdiction pursuant to K.S.A. 20-3018(c).

## I. NEGLIGENCE CLAIMS

When ruling on a motion for directed verdict,

"the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. A similar analysis must be applied by an appellate court when reviewing the grant or denial of a motion for directed verdict. [Citation omitted.]" *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 714, 924 P.2d 1239 (1996).

As previously noted, in granting the Calvers' motion for directed verdict, the trial court found that the negligence claims against Gunter were barred by the doctrine of subsumption. The Calvers correctly assert that there is no such doctrine as the "doctrine of subsumption." However, it is well established that "the judgment of a trial court may be upheld on appeal although that court may have relied on the wrong ground or assigned a wrong reason for its decision. [Citations omitted.]" *State v. Mincey*, 265 Kan. 257, 267, 963 P.2d 403 (1998).

Here, as will be covered more fully later, the issue becomes moot because the jury found the Calvers should have been aware of the termite damage on December 6, 1990. This lawsuit was filed on December 13, 1995, 5 years and 1 week after the Calvers should have known of the termite damage. Obviously, the Calvers would not have known the full nature and extent of the damage, but would have had as much knowledge and information as was available to Hinson and Gunter at that time.

Here, the jury, having been properly instructed, necessarily found the Calvers had sufficient evidence furnished them that would have led a reasonable person to discover the termite damage

by December 6, 1990. Whether the action is in contract or in tort is immaterial under the facts of this case.

## II. FRAUD CLAIMS

The Calvers' fraud claims are also barred by the statute of limitations. The trial court held:

"The Court found that the claims against [Gunter] based on the Kansas Consumer Protection Act are barred by the applicable statute of limitations and, further, no evidence was shown of any false or untrue statement made by [Gunter]. As to claims based on fraud, the Court found that [the Calvers] failed to present sufficient evidence to make a *prima facie* case against [Gunter] based on fraud and the Court additionally found that the [Calvers] failed to present sufficient evidence that [Gunter] made any false or untrue statement. For these reasons, the Court found and determined that all claims against [Gunter] should be and were dismissed and Gunter was granted a directed verdict."

In *Brunner v. Jensen*, 215 Kan. 416, Syl. ¶ 4, 524 P.2d 1175 (1974), the court stated:

"Upon appellate review this court accepts as true the evidence, and all inferences to be drawn therefrom, which support, or tend to support, the special findings, verdict, and judgment below, and disregards any conflicting evidence or other inferences which might be drawn therefrom. Where findings are attacked for insufficiency of the evidence, or as being contrary to the evidence, this court's power begins and ends with determining whether there is evidence to support such findings. Where the jury's findings are so supported, they will not be disturbed on appeal. It is of no consequence there may have been contrary evidence adduced which, if believed by the jury, would have supported different findings."

The *Brunner* court further stated that "[s]pecial findings of a jury are to be liberally construed on appeal and interpreted in the light of the testimony with the view of ascertaining their intended meaning." 215 Kan. 416, Syl. ¶ 5. In *Knape v. Livingston Oil Co.*, 193 Kan. 278, 392 P.2d 842 (1964), the jury found for the plaintiff, and the defendant appealed, arguing that the special findings of the jury compelled a judgment for the defendant notwithstanding the general verdict in favor of the plaintiff. The *Knape* court noted a few general rules applicable to questions relating to special findings and general verdicts and stated:

"A general verdict imports a finding upon all of the issues in the case not inconsistent with the special findings. In considering special findings the court is not permitted to isolate one and ignore others, but all are to be considered together,

and if one interpretation leads to inconsistency and another to harmony with the verdict, the latter is to be adopted. If special findings cannot be reconciled with the general verdict and are sufficiently full and complete in themselves, and are not inconsistent in themselves, judgment must follow the special findings. [Citations omitted.]" 193 Kan. at 280.

The jury answered the special interrogatories as follows:

"1. Was the fact of termite damage in Plaintiffs' residence at 9530 Manor Road, Leawood, Kansas reasonably ascertainable by them prior to January 10, 1990?
    ANSWER:    Yes _X_    Jurors: twelve _X_; eleven ____; or ten ____
                    No ____
"2. If it was not reasonably ascertainable until sometime after January 10, 1990, by what date was it reasonable for plaintiffs to have discovered the termite damage?
    ANSWER: _12/6/90_    Jurors: twelve _X_; eleven ____; ten ____"

Beneath the line providing for an "answer", the jury wrote "renewal contract by Gunter."

In the general verdict form, the jury set the Calvers' damages at $20,000. Beside this sum appears the printed words "No punitive damages" and the jury foreman's signature. The jury foreman explained to the court that the jury did not intend to award punitive damages. The individual jurors were polled on this issue and agreed that was their intent. The jury foreman also explained the date of December 6, 1990, was the date of Gunter's renewal contract. Given this court's standard of review that a harmonious adoption of special findings is to be taken, if possible, the trial court did not err in adopting the findings of the jury. In any event, the Calvers' claims are barred by the statute of limitations.

## III. KANSAS CONSUMER PROTECTION ACT

The trial court's amended journal entry stated that the claims against Gunter, based on the KCPA, were barred by the applicable statute of limitations, Further, even if such claims were not barred by the statute of limitations, "no evidence was shown of any false or untrue statement made by [Gunter]." For the reasons set forth above, the statute of limitations bars the KCPA claims.

## IV. THE CALVERS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Calvers filed a motion for partial summary judgment against Gunter asserting violations of the KCPA. They claim that Gunter responded, "but did not comply with Supreme Court Rule 141 in that there were no proper citations to the record to controvert plaintiffs' allegations." The Calvers cite *McCullough v. Bethany Med. Center*, 235 Kan. 732, 683 P.2d 1258 (1984), as authority for the contention that " '[c]ompliance with Supreme Court Rule 141 is mandatory.' "

In *McCullough*, this court held:

"By virtue of defendant Stubblefield's failure to comply with Rule 141(a), plaintiff could not comply with Rule 141(b) relative to what facts were controverted and what were not and the evidentiary basis therefor. At the hearing Stubblefield's counsel stated the case was complex and he thought the way he prepared his memorandum was better, under the circumstances, than following the mandates of Rule 141. The district court agreed and found defendant had 'substantially complied' with the rule. We do not agree. The bottom line is the summary judgment was granted with no way to determine then or now what facts are or are not controverted or on what evidence the parties rely. Rule 141 is not just fluff—it means what it says and serves a necessary purpose. Contrary to the opinion of Stubblefield's counsel, a moving party's compliance with Rule 141(a) is even more crucial in complex cases than in simple ones. In accordance with the express language of the rule, the district court could not even hear the motion until the moving party was in compliance with the requirements of the rule. On this basis alone, the summary judgment for Stubblefield must be reversed." 235 Kan. at 736.

*McCullough* is distinguishable on its facts because in that case, the doctor who failed to respond properly to the motion for summary judgment was completely dismissed from the case by virtue of the court's granting summary judgment. In the present case, the trial court denied, rather than granted, a motion for summary judgment. Thus, denial of the Calvers' motion for summary judgment did not have the same effect in this case as the decision granting summary judgment did in *McCullough*.

Gunter noted the trial court prefaced its ruling on three separate motions for summary judgment. In its memorandum decision, the trial court stated: "There are over two hundred statements of un-

controverted fact in the three motions for summary judgment under consideration here. Most of the facts of this case are not disputed. The disputes stem from inferences that can be drawn from agreed-upon facts."

Gunter substantially complied with Rule 141 (1998 Kan. Ct. R. Annot. 176) because it did respond to the Calvers' statement of facts, numbered paragraph by numbered paragraph, and corrected the trial court as to portions of the record which contained facts controverting those statements. Gunter admitted, denied, or claimed it was without sufficient evidence to confirm or deny each of the Calvers' 74 statements. This issue fails.

## V. THE CALVERS' MOTION TO AMEND

The standard of appellate review of a trial court's denial of a motion to amend a pleading to add a claim for punitive damages was set out in *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, Syl. ¶ 5, 897 P.2d 123 (1995), wherein the court stated that "[u]nder K.S.A. 60-3703, the decision whether to permit the plaintiff to amend is discretionary in that the statute provides that the court *may* allow the filing of an amended petition claiming punitive damages. Thus, the standard of review on appeal is one of abuse of discretion." Judicial discretion is abused when "judicial action is arbitrary, fanciful, or unreasonable." 257 Kan. at 804.

The Calvers moved to amend their petition to add a claim for punitive damages against Gunter and Hinson. The amendment was allowed against Hinson and denied as to Gunter.

Pursuant to K.S.A. 60-3703, the trial court

"may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim pursuant to K.S.A. 60-209, and amendments thereto."

With respect to Gunter, however, the trial court ruled:

"The evidence of the conduct of Gunter Exterminating points to no such affirmative acts of concealment of damage. The evidence indicates that Gunter knew it was inspecting a residence in preparation for its sale, that it knew there had been prior infestation, that it knew that the prior damage was fairly widespread in the house, and that it indicated only that the house had previously been treated.

The record does not establish a probability that plaintiffs will prevail on the claim, and the amendment will not be granted as to defendant Gunter."

The trial court's reasoning for granting the Calvers' motion to amend the petition to state a claim for punitive damages against Hinson, but to deny the motion as to Gunter, was not an abuse of discretion. This issue fails.

## VI. THE CALVERS' EXPERT WITNESS

The Calvers state that Richard Merker, counsel for Gunter, previously represented the interests of Batman, the Calvers' expert witness, in another lawsuit. The Calvers issued interrogatories and a request for production of documents in an attempt to obtain any information known by Merker on this subject. A motion to compel discovery was filed and Merker asserted the work product privilege, claiming that such discovery sought items "prepared in anticipation of litigation and work product." The trial court denied the motion requesting documents and the response to interrogatories on this issue. The Calvers also filed a motion in limine to exclude evidence pertaining to prior litigation involving Batman.

At trial, Merker sought to introduce evidence and to cross-examine Batman about the case in which he had represented Batman or his business. The Calvers claim Merker was attempting to attack Batman's credibility using information about Batman's prior lawsuit in which Merker was Batman's attorney. The Calvers argue the trial court has no discretion to permit an attorney to cross-examine a former client unless the requirements of Kansas Rule of Professional Conduct (KRPC) 1.6 (1998 Kan. Ct. R. Annot. 309) have been fulfilled.

KRPC 1.6 provides: "(A) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b)." The Kansas Comment to this rule states that "[t]he confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such

information except as authorized or required by the Rules of Professional Conduct or other law." (1998 Kan. Ct. R. Annot. 310.)

The Calvers claim that although it was not unethical for Merker to represent Gunter, he could not use information about Batman obtained through prior representation. The Calvers maintain that Batman's attempt to assert the attorney-client privilege shows that he did not waive the privilege.

The trial court overruled the Calvers' objection and stated:

"The Court notes that the objection is not timely, that there has been plenty of opportunity to raise this issue before the middle of the examination—or actually, after the witness has, in fact—the examination has been concluded of the witness and the Court proposed to reopen it in order to cure the misunderstanding with respect to the scope of the examination that the defendant Gunter wanted to conduct through its counsel.

"Now, this Court is very deferential to the code of professional responsibility as it applies to attorneys, and is very mindful of the importance of having a code of conduct that we adhere to. But I am not willing to allow the plaintiff to raise the issue of ethics in the middle of the trial where there has been an opportunity to learn about and, in fact, has been known to the plaintiff and their counsel, the representation that Mr. Merker had of this particular witness who is plaintiffs's expert.

"And to me the prospect that Mr. Merker, by reason of that prior representation, would know some warts and weaknesses as the expert had that would make him vulnerable to attack on cross-examination, and to confront the Court with this issue in the middle of trial is not fair. You've had a year and a half to learn about and discover this case, and now we've got the defendant Hinson who has spent a year and a half agonizing with this case, her counsel who's been employed to appear here at no small expense, I am sure, to defend her, and the same is true of Gunter. And you want me to deny cross-examination to one of those parties because of the fact that the witness is apt to look bad in light of some prior representation that Mr. Merker has made of him, and the Court's not willing to subscribe to that argument."

In conclusion, the trial court did not err in ruling the Calvers' objection was not timely and in refusing to allow the Calvers' counsel to raise the issue of ethics in the middle of the trial when counsel knew of the prior representation at the time of depositions and made no objection until late in the trial. This issue fails.

Affirmed.