**Lori McGREGOR, Plaintiff,**

v.

**CITY OF OLATHE, KANSAS, et al., Defendant.**

**No. CIV. A. 00–2020–CM.**

United States District Court, D. Kansas.

March 22, 2001.

Lori McGregor, Olathe, KS, pro se.

Michael K. Seck, Michelle R. Stewart, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff in this case, who appears pro se, sued numerous defendants alleging various civil rights and state tort claims. All defendants, except the City of Olathe, Kansas and Officers Vogelsberg, Alton, Moore, and Livengood, previously have been dismissed from this action. This matter is before the court on defendants City of Olathe, Kansas and Officers Vogelsberg, Alton, Moore, and Livengood's motion for summary judgment (Doc. 126).

● **Facts** [1]

**A. Events Leading to Plaintiff's Arrest**

On September 14, 1998, plaintiff Lori McGregor, a white female, purchased gas at a Citgo gas station. Upon pulling away from the gas pump, her car stalled. An unknown delivery person helped plaintiff push her car to the side of the building. While plaintiff was attempting to figure out what was wrong with her car, another woman, Colleen Kahn, walked up and asked plaintiff if her car wouldn't run. Apparently Ms. Kahn's vehicle had died and she believed she had gotten bad gas.

Plaintiff and Ms. Kahn went into the Citgo station and Ms. Kahn explained to the two clerks, Ms. Lay and Ms. Kitto, that she believed they had purchased bad gas. At some point, plaintiff took over the conversation and asked to speak to the owner. Plaintiff acknowledges that she was upset and that she raised her voice during the conversation. While plaintiff

does not specifically recall whether she used profanity, she acknowledges that she may have.

Ms. Lay got on the phone and called someone whom plaintiff presumed to be the owner. Ms. Lay indicated that the owner offered to put the chemical Heet into their gas tanks. At that point, plaintiff grew even angrier. Plaintiff ordered Ms. Lay in a loud voice to get the owner there immediately. Ms. Lay made another phone call and indicated to plaintiff that the owner was coming to take care of the situation. Plaintiff admits that she scared and intimidated the two clerks.

Plaintiff returned to her car and made some phone calls from her cell phone. She called for a tow truck and a friend, Sally Bitar, for a ride. After about twenty minutes, plaintiff went back into the store and asked where the owner was. Plaintiff acknowledges that she raised her voice to Ms. Lay and, in plaintiff's own words, "went in there and wore her out." Ms. Lay testified that plaintiff was using profanity.

Plaintiff returned to her car, made more phone calls, and then returned to the store. Approximately thirty to forty minutes had passed since plaintiff had requested the owner. Plaintiff asked Ms. Lay why the owner was not there yet. Plaintiff acknowledges that her voice was probably raised during this conversation. Plaintiff returned to her car, waited another five or ten minutes, and returned to the store. Plaintiff leaned over the counter and said, "Where is he?" Plaintiff was very angry at this time. Ms. Kitto told plaintiff that the owner was up the street at his Phillips 66 station.

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56. The court notes, however, that, in disputing defendants' facts, plaintiff failed to refer to the record as required by D. Kan. Rule 56.1. Accordingly, the court will consider those portions of the record it can identify and ignore the alleged facts where the court can find no support in the record.

Plaintiff walked up the street to the Phillips 66 station. When she walked in, she asked one of the men behind the counter whether the owner, Matthew Serrano, was there. Plaintiff was pointed to the back of the store and found Mr. Serrano sitting in some kind of supply closet. Plaintiff told Mr. Serrano in a peremptory tone that she wanted a letter on letterhead stating that Mr. Serrano would pay for the damages to her vehicle caused by the bad gas. Mr. Serrano recalls that plaintiff was screaming and yelling the entire time while customers were in the store. In any event, Mr. Serrano did not specifically respond to plaintiff but shrugged as though in acquiescence. Plaintiff assumed that Mr. Serrano was agreeing to write out a letter for her on letterhead and, indeed, Mr. Serrano intended to write the letter that plaintiff had requested. Plaintiff told Mr. Serrano that she would wait outside.

While plaintiff was outside, there were customers coming and going. She told them she had bought bad gas at Citgo down the street, that this guy (Mr. Serrano) owns both Citgo and Phillips 66, and that they might want to reconsider purchasing gas there. Plaintiff believes that she made this statement to three or four individuals and admits that she was trying to scare off Mr. Serrano's customers.

Plaintiff returned inside the store and found Mr. Serrano sitting at a small desk in the supply closet with a scrap of paper in his hand and a pen. When plaintiff saw that Mr. Serrano was not writing on his letterhead, she loudly said, "I told you that I wanted that on letterhead." Plaintiff acknowledges that she was speaking loud enough that the counter people and customers in the store could hear her.

At that point, Mr. Serrano said, "You know what, I'm just going to call the cops." Plaintiff turned around and addressed everyone in the store that she had bought bad gas at the Citgo, that he (Mr. Serrano) owned both stores, that he was refusing to make any redress, and that he had ruined her car. Plaintiff knew that everyone could hear because they were silent and staring. Then, plaintiff walked back to her car and sat in it.

**B. Plaintiff's Arrest**

Officer Livengood was dispatched to the Phillips 66 station where he met Mr. Serrano. Livengood was told by dispatch that there was a disturbance at the store. Mr. Serrano told Livengood that the person with whom he was having a disturbance had left the store and gone to the Citgo store. Livengood relayed this information to Officer Alton, and Alton went to the Citgo store.

When Alton arrived, he parked his patrol car next to plaintiff's car. Alton asked plaintiff for some identification or a driver's license. Plaintiff refused to give Alton her identification. Plaintiff testified that she felt this request was out of line and that she suggested he run her plates if he wanted to know who she was. Alton stepped to the back of plaintiff's car, returned to his car, and then called in her plate number.

After Alton ran plaintiff's plates, he got out of his car, walked over to her and asked her to step out of her car. Plaintiff describes Alton's tone as authoritative. Plaintiff believes that she gave him a negative response and said something to the effect of, "Why do you want me to step out of the car?" Plaintiff thought at that point he had no right to ask her to step out of the car. Plaintiff testified that she did not intend to get out of the car because she was exhausted and her mid-section hurt from gastroentirological and female problems. Plaintiff told Alton that she didn't feel well, and Alton said that it was alright for her to stay in her car.

Alton indicated to plaintiff that if she didn't provide him with some identification, he could have her arrested. At that point, she got her license and handed it to him. Plaintiff asked Alton if she were under arrest, to which Alton replied that she was not. At some point during plaintiff and Alton's initial conversation, plaintiff told him in general the details of what happened to her car. She indicated that she couldn't drive off because she had gotten bad gas.

Livengood arrived at the scene where plaintiff and Alton were and parked his patrol car. Livengood met with Alton and then walked over to plaintiff's car, where he asked plaintiff what was going on. Plaintiff did not say anything to Livengood. It was plaintiff's view that she did not have to answer him. Plaintiff then got on her cell phone and called two of her friends, one of whom, Luke Mattingly, she spoke with, and one of whom, Sally Bitar, she left a message with. Plaintiff asked Mr. Mattingly to come get her and told Mr. Mattingly that the cops were harassing her. Plaintiff claims that Livengood was harassing her by leaning over the car and telling her that he would arrest her if she didn't tell him what happened. Plaintiff also called her attorney, who asked plaintiff if she were under arrest. Plaintiff asked the officers again whether she was under arrest, to which they responded "no." In all, Livengood asked plaintiff possibly eleven times what had happened, and each time plaintiff refused to say anything. Plaintiff acknowledges that Livengood repeatedly told her that she was not free to leave.

Alton and Livengood retreated from plaintiff's car to talk among themselves. The record contains conflicting testimony as to what happened immediately thereafter. Both Alton and Livengood testified that Alton then went back to the Phillips 66 to talk to Mr. Serrano about signing a complaint for disorderly conduct, which Mr. Serrano said he would do, and that Alton returned to report to Livengood and to decide whose complaint book would be used. Alton then proceeded to leave in his patrol car to get the complaint signed. Plaintiff, however, testified that Alton did not leave, come back, and then leave again. Rather, during the conversation between Alton and Livengood, plaintiff testified that she overheard Livengood tell Alton to go get the complaint signed. It was only then, plaintiff contends, that Alton proceeded to leave in his patrol car for the first time. In any event, it was when Alton was in his patrol car that the next significant events occurred.

At that point, plaintiff decided she was going to leave. She began placing files and other personal items in her trunk. When plaintiff had finished gathering her personal belongings, she decided to leave. Alton was in his patrol car, and Livengood was standing approximately ten to fifteen feet away from plaintiff. Plaintiff said something like, "see ya" to Livengood, and began walking across the front of the Citgo store. While plaintiff was walking around the side of her car and heading toward the front of the gas station, she saw a white pick-up truck she believed to be Mr. Mattingly's. When she saw the truck she waved at it. It was Livengood's perception that plaintiff was running from her vehicle to the truck. Livengood testified that he told plaintiff in a loud voice to "stop," while plaintiff contends that Livengood said "hey."

Livengood began running after plaintiff and tackled plaintiff to the ground. After Livengood tackled plaintiff, Livengood's knees were on the ground and his upper body was on top of plaintiff. Plaintiff testified that she was then carried to the trunk of her car and slammed on the trunk. Plaintiff claims that Livengood, Al-

ton, and a third officer, Vogelsberg, were carrying her. However, plaintiff never saw Vogelsberg arrive at the scene, nor could she describe what part of her body the officers were holding or which officer was in which position. Alton and Livengood both testified that only Livengood ran after plaintiff, grabbed hold of her in kind of a bear hug, and brought her back to her car. The entire time, Alton testified, plaintiff was kicking and flailing. Alton testified that he met Livengood (and plaintiff) at the trunk of plaintiff's car. Vogelsberg testified that at no time did he ever touch plaintiff.

Livengood pinned plaintiff to the trunk and was laying on her. Plaintiff testified that another officer had hold of her right arm, but she does not recall whom. Plaintiff was then handcuffed and told she was under arrest. The record, however, is unclear as to whom handcuffed and made this statement to plaintiff. She was then escorted to a patrol car.

Interestingly, plaintiff had her car keys in one of her hands. While her hands were handcuffed behind her back, and while she was in the patrol car, she slipped one hand out of the handcuffs and placed her keys in the front of her pantyhose. Plaintiff knew that the officers had been searching for her keys. In fact, the officers had asked her if she had her keys, and she replied "no." Plaintiff admits that she lied to the officers about this.

Alton transported plaintiff to the Olathe Police Department. Alton kept asking plaintiff why she made them arrest her. He also told plaintiff that things could be much worse at the station if she didn't cooperate. Once at the police station, plaintiff was taken to a room to be searched. Officer Moore, a female officer, told plaintiff that they were looking for some keys. Plaintiff told the officer that the keys were in her pantyhose because plaintiff did not want to be searched. Offi-

cer Moore removed the keys from plaintiff's pantyhose and thereafter had no further contact with plaintiff.

Plaintiff was at some point put into a holding cell. Alton asked plaintiff if she were unwell or in pain and if she wanted medical attention. Plaintiff relayed to Alton that she wanted medical attention, so MedAct was called. Two women paramedics examined plaintiff and recommended that she be transported to Olathe Medical Center's emergency room to be checked out by a doctor. Plaintiff, however, declined being transported to the hospital because she knew people at the hospital and thought it would be too humiliating to arrive in handcuffs. After plaintiff was released from the police station, plaintiff's friend took her to Shawnee Mission Medical Center. While at the hospital, plaintiff did not see any bruises, contusions, cuts, or scrapes on her body. The doctors apparently told plaintiff that she had soft tissue damage, but the doctors did not tell plaintiff where on her body the damage occurred. About two days later, plaintiff noticed a bruise on her upper thigh, about the size of a quarter. Plaintiff also had scratches on her hand at the wrist and believes those scratches were not there before she was handcuffed.

## C. Subsequent Court Proceedings

Plaintiff was charged with disorderly conduct, obstruction of justice, battery on a law enforcement officer, and fleeing arrest. She was tried in Olathe Municipal Court and found guilty of fleeing arrest, battery on a law enforcement officer, and disorderly conduct. Plaintiff contends that she was not given a fair trial, but there exists no evidence in the record to support her contention.

Plaintiff appealed her verdicts to the Johnson County District Court and was found guilty of battery on a law enforce-

ment officer. The district court ruling stated in pertinent part:

> ... I believe that what occurred was Ms. McGregor decided she was going to leave before this process was finished.... The complaining victim had indicated that he was going to go ahead and sign the complaint.... I think she tried to leave and he tried to get her to stop and just as the testimony indicates that the officer had given—at least one other witness verified that and in doing so he attempted to pick her up and restrain her and she flailed and kicked and intentionally struck him in a rude and angry manner....

## II. Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; see *Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. 42 U.S.C. § 1983 Claims

 Plaintiff asserts a cause of action against defendants Livengood, Alton, Moore, and Vogelsberg pursuant to 42 U.S.C. § 1983. Section 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Lugar v. Edmondson Oil Co.,*

457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Plaintiff does not, however, identify in her amended petition whether she is asserting her § 1983 claims against these defendants in their official capacity, individual capacity, or both. For purposes of this opinion, the court will assume that plaintiff alleges that the individual defendants were acting in both capacities.

### 1. Fourth Amendment Claims

Interpreting plaintiff's amended complaint liberally, it appears that plaintiff asserts claims under the Fourth Amendment in three ways. First, plaintiff asserts that Livengood, Alton, and Vogelsberg illegally seized her without cause. Second, she alleges that these defendants used excessive force at the time of her arrest. Third, plaintiff contends that defendant Moore performed an illegal search of plaintiff.

### a. Probable Cause

■ Plaintiff contends that she was arrested and detained without probable cause in violation of her Fourth Amendment rights. Plaintiff also alleges a violation of Section 15 of the Bill of Rights of the Constitution of the State of Kansas. Under Kansas law, the scope of the constitutional protections afforded by the Kansas Constitution Bill of Rights, Section 15, and the Fourth Amendment to the United States Constitution, is usually considered to be identical. *State v. Fortune,* 236 Kan. 248, 250, 689 P.2d 1196, 1198 (1984).

■ An arrest without probable cause violates a person's right under the Fourth Amendment to be free from unreasonable searches and seizures. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In this case, plaintiff was formally placed under arrest after she was tackled and brought back to her car. Plaintiff was later found guilty in municipal court for disorderly conduct, battery on a law enforcement officer, and fleeing arrest. Plaintiff appealed her convictions, and the conviction of battery on a law enforcement officer was affirmed. Plaintiff's convictions for disorderly conduct, battery on a law enforcement officer, and fleeing arrest conclusively establish the existence of probable cause for her arrest. *Martinez v. City of Albuquerque,* 184 F.3d 1123, 1127 (10th Cir.1999). This remains true notwithstanding that plaintiff was found not guilty for disorderly conduct and fleeing arrest on appeal. *Mason v. Stock,* 955 F.Supp. 1293, 1307 (D.Kan.1997) (holding that municipal court conviction established that there existed probable cause even though defendant was found not guilty on appeal to the district court). Thus, plaintiff's conviction precludes her from pursuing a § 1983 claim against the officers for placing her under arrest.

■ However, determining whether plaintiff's initial seizure was a constitutional violation requires further analysis. It is undisputed that Livengood tackled plaintiff to the ground as plaintiff was attempting to leave the scene. It is also undisputed that Livengood had repeatedly told plaintiff that she was not free to leave. The "seizure" within the meaning of the Fourth Amendment occurred at the time when Livengood actually applied physical force to restrain the plaintiff. *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Thus, plaintiff was not seized until she was tackled. At the time plaintiff was tackled, she was fleeing by foot from an investigation wherein she was, at that point, suspected of the crime of disorderly conduct. Whether Mr. Serrano had actually agreed to sign a complaint is irrelevant in these circumstances. See *United States v. Bell,* 892 F.2d 959, 967 (10th Cir.1989) (holding that a suspect's actions in fleeing from a

law enforcement officer who had reasonable suspicion of illegal activity supplied additional grounds supporting probable cause for seizure). The court finds that there existed sufficient probable cause for Livengood to seize plaintiff as plaintiff attempted to leave the scene. Plaintiff's unlawful arrest claim fails as a matter of law.

### b. Excessive Force

■ Plaintiff argues that Livengood, Alton, and Vogelsberg used physical force that was clearly excessive in light of the circumstances existing at the time of the arrest. Specifically, plaintiff alleges that Livengood attacked her on a grassy median adjacent to the Citgo gas station and then, along with Alton and Vogelsberg, carried her to the rear of her car where she was forcibly pinned to the car by Livengood. Defendants deny this fact sequence but argue that, even assuming these facts occurred, the record demonstrates that the force used in the manner alleged by plaintiff was objectively reasonable.

■ In *Graham v. Connor,* the Supreme Court held that all excessive force claims should be analyzed under the reasonableness standard of the Fourth Amendment. 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The reasonableness inquiry is an objective one and heavily fact dependent. *Id.* Moreover, reasonableness of the use of force is viewed from the perspective of a reasonable officer on the scene and includes an allowance for the fact that officers are forced to make split second judgments in tense, uncertain, and rapidly changing situations. *Id.* The factors employed to determine reasonableness are the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest. *Wilson v. Meeks,* 52 F.3d 1547, 1552 (10th Cir.1995) (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865).

In this case, the crime of disorderly conduct, which is what the officers were intending to charge plaintiff with, is not necessarily severe. Moreover, there is no contention that, at that time, plaintiff posed a threat to the officers' safety. However, it is clear that plaintiff, at that time a suspect of a crime, attempted to evade the officers during the time the officers were conducting an investigation.

■ Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to affect it. *Terry v. Ohio,* 392 U.S. 1, 22–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Plaintiff acknowledges that she was instructed by the officers that she was not going anywhere pending their investigation of Mr. Serrano's complaint. Yet, when she believed that a friend had arrived to pick her up, she said "see ya" to Livengood, made a waving gesture towards the individual she thought was her friend, and began either walking or running toward the individual's truck. There is conflicting testimony as to whether Livengood yelled "hey" or "stop." In any event, even if Livengood only yelled "hey," as plaintiff contends, the court finds that Livengood's act of restraining plaintiff to stop her from fleeing pending the investigation was objectively reasonable. Livengood reasonably presumed that plaintiff was attempting to flee the scene of the investigation. In these circumstances, a reasonable officer, forced to make a split second judgment, may have done the same. See *Giese v. Wichita Police Dep't,* No. 94–3439, 1995 WL 634173, at *2 (10th Cir. Oct. 30, 1995) (holding that, when plaintiff, a suspect, was shown officers' credentials and ordered into a police car, and plaintiff decided to run, running after

and tackling plaintiff was not constitutionally excessive). Moreover, there is no evidence in the record that the force with which Livengood tackled plaintiff was excessive. *Id.* (holding that fact that plaintiff's arm was broken during tackle did not constitute excessive force). Livengood used that amount of force necessary to prevent plaintiff from fleeing the scene.

Further, there is testimony that plaintiff hit and kicked Livengood after he tackled plaintiff. Significantly, Alton testified that he witnessed plaintiff striking Livengood. Indeed, plaintiff was found guilty on appeal of battery on a law enforcement officer. Thus, plaintiff's actions towards Livengood substantiated the need for the officers (whichever officers may have been involved) to carry her to the rear of her car and forcibly pin her to the car. The court finds that carrying plaintiff to her car and pinning her to the car was objectively reasonable in light of the circumstances. Finally, the court determines that there is no evidence in the record that the force used by these officers was constitutionally excessive. Plaintiff's claim for excessive force is dismissed.

**c. Search**

■ At the police station, plaintiff was taken to a room to be searched by Moore. Moore told plaintiff that they were looking for some keys, and plaintiff replied that the keys were in her pantyhose. Moore removed the keys from plaintiff's pantyhose and thereafter had no further contact with plaintiff. Plaintiff alleges that Moore performed an illegal search of her person.

■ It is well settled that, at the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed. *Illinois v. Lafayette,* 462 U.S. 640, 646, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). Thus, Moore was constitutionally permitted to remove what items plaintiff had on her person. Plaintiff's claim against Moore is dismissed.

**2. Fifth Amendment Claim**

■ Plaintiff appears to allege that her Fifth Amendment rights were violated because she was not read her Miranda rights until she was leaving the police department. The Fifth Amendment, however, only guarantees plaintiff the right to be free from self-incrimination. The *Miranda* decision does not suggest that police officers who fail to advise an arrested person of her rights are subject to civil liability. Rather, the Fifth Amendment requires, at most, only that any confession made in the absence of such advice be excluded from evidence at trial. *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir. 1976). A police officer who fails to give a Miranda warning is not subject to liability under § 1983. *Id.*

■ Plaintiff also claims that Livengood and Alton refused to respect her right to counsel and her right to remain silent by continuing to question her after her identification was completed. Nowhere in the record, however, is there evidence that plaintiff invoked her right to counsel. More importantly, plaintiff has put forth no evidence, nor does she allege, that she was compelled to testify against herself. Defendants are entitled to summary judgment on plaintiff's Fifth Amendment claims.

**3. Fourteenth Amendment Claims**

■ Although it is not entirely clear, plaintiff appears to allege both a due process and equal protection violation of her Fourteenth Amendment rights. With respect to plaintiff's Fourteenth Amendment equal protection claim, the Supreme Court has explained that " '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every per-

son within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923) (quoting *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)). Thus, an equal protection claim requires the plaintiff to allege that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Plaintiff in this case has failed to assert any such allegation, nor is there any evidence in the record to show that she was treated differently from others similarly situated. Accordingly, plaintiff's equal protection claim is dismissed.

■ Plaintiff's due process claim stems from her allegations that she was denied a fair trial at her underlying criminal proceeding, that the police officers conspired to procure false testimony, and that the officers used excessive force in arresting her. With respect to plaintiff's excessive force claim, the court recognizes that the use of excessive force against an arrestee or pretrial detainee is actionable under § 1983 as a deprivation of life or liberty without due process of law in violation of the Fourteenth Amendment. *Meade v. Grubbs,* 841 F.2d 1512, 1527 (10th Cir. 1988). However, the court already has found that there is no evidence in the record that the force used by the arresting officers was excessive.

■ Regarding plaintiff's claims that she was denied a fair trial and that the police officers conspired to procure false testimony, there is simply no evidence in the record supporting these allegations. Plaintiff contends that the testimonies of the police officers was inconsistent which, plaintiff claims, demonstrates that the witnesses were not truthful. Plaintiff also claims that Mr. Serrano's testimony demonstrates the officers' actions in maliciously procuring the disorderly conduct complaint. Upon review of the record, the court finds no support for plaintiff's contentions. Plaintiff had adequate due process in the form of both a municipal and district court trial. In each of these venues, plaintiff had the ability, through her counsel, to cross-examine witnesses and test their veracity. At most, plaintiff has demonstrated that some of the witnesses had varying points of view concerning the incident. This does not, however, demonstrate perjury. *State v. Barker,* 18 Kan. App.2d 292, 294, 851 P.2d 394, 396 (1993) (perjury cannot be established by one person's testimony countering another person's testimony); see also *Dukes v. State of New York,* 743 F.Supp. 1037, 1042 (S.D.N.Y.1990) (holding that fact that one witness's testimony is at odds with testimony of another witness does not supply a sufficient basis for allegations of perjury). Likewise, plaintiff advances no facts to support her claim of conspiracy. That is, she provides no evidence that Alton, Livengood, and Mr. Serrano met, determined to conspire against plaintiff, and carried out the conspiracy through a course of conduct.

■ Finally, plaintiff asserts that she has been denied a property interest in her pursuit of happiness and ownership of real estate in the city of Olathe, Kansas because, plaintiff contends, she cannot remain in Olathe after two prosecutions.[2]

2. Prior to the filing of this lawsuit, plaintiff was prosecuted in Olathe Municipal Court on charges unrelated to the instant lawsuit.

Plaintiff has failed, however, to set forth how such a property interest arose and how the conduct of the defendants have prevented her from remaining in Olathe. Moreover, plaintiff has utterly failed to show the court how she was deprived of her property interest without due process. Plaintiff's claims under the Fourteenth Amendment are dismissed.

### B. Qualified Immunity

 To the extent that plaintiff asserts constitutional claims against the defendants in their individual capacities, the defense of qualified immunity is applicable. Qualified immunity protects police officers from liability when acting within the scope of their employment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 644 (10th Cir.1988).

The Supreme Court has established a two-part approach to determine if qualified immunity applies. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir.1998) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

Thus, the court follows this two-step test to analyze the issue of qualified immunity raised by defendants here. *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 745 (10th Cir.1999).

Each of plaintiff's claims brought pursuant to § 1983 have been addressed above. It is clear that plaintiff has failed to establish that she was deprived of a constitutional right. Because the court has concluded that plaintiff failed to allege a deprivation of a constitutional right, the court need not proceed to the second step of the qualified immunity test. The defendants, to the extent they were sued in their individual capacities, are entitled to qualified immunity.

### C. 42 U.S.C. § 1985 Claim

 Plaintiff alleges that defendants violated her rights under 42 U.S.C. § 1985. Section 1985 creates a cause of action against a party conspiring to deprive any person of equal protection of the law or the privileges and immunities of citizenship. 42 U.S.C. § 1985(3). To state a claim, plaintiff must plead 1) a conspiracy 2) for the purpose of depriving any person or class of persons of equal privileges and immunities under the laws, and 3) an act in furtherance of the conspiracy 4) whereby a person or his property is injured or he is deprived of any right or privilege of citizenship. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

In this case, plaintiff has not adequately alleged a conspiracy, nor has plaintiff put forth evidence to create a genuine issue of material fact that a conspiracy existed. In fact, plaintiff has failed to identify the purported members of the conspiracy. Plaintiff cannot simply make a conclusory allegation that a conspiracy existed; rather, plaintiff must provide facts showing agreement and concerted action. *Sooner Prods.*

*Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983). In this case, plaintiff's allegation of a conspiracy, without more, is insufficient to state a claim for conspiracy. Plaintiff has failed to allege any facts tending to show agreement or concerted action. The court finds that plaintiff's § 1985(3) claim fails as a matter of law. *Clulow v. Oklahoma,* 700 F.2d 1291, 1303 (10th Cir. 1983) (holding that conclusory allegation of conspiracy without supporting factual averments insufficient to state claim).

### D. Municipal Liability

Plaintiff also alleges a violation of her rights by the City of Olathe, Kansas. Plaintiff claims that the violations were caused by a pattern or policy of misconduct and the failure to properly supervise its officers. To establish municipal liability under § 1983, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, a municipality may not be held liable where there was no underlying constitutional violation by any of its officers. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). In *Heller,* the Court reasoned that where a municipality is "sued only because [it was] thought legally responsible" for the actions of its officers, it is "inconceivable" to hold the municipality liable if its officers inflict no constitutional harm, regardless of whether the municipality's policies might have "authorized" such harm. *Id.*

In this case, plaintiff seeks to hold the city liable solely because of the actions of its individual officers. The court's finding that neither Moore, Alton, nor Vogelsberg's conduct violated plaintiff's constitutional rights thus precludes the imposition of liability against the City of Olathe. *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir.1993). Plaintiff's claims against the City of Olathe, Kansas are hereby dismissed.

### E. State Law Claims

#### 1. Assault, Battery, False Arrest, and False Imprisonment

Plaintiff alleges that the defendants are liable for assault, battery, and false arrest and imprisonment.[3] Kan.Stat. Ann. § 60–514 provides that actions for "assault, battery, malicious prosecution, or false imprisonment" must be brought within one year. Thus, the one-year statute of limitation set forth in § 60–514 applies to these state tort claims.

In this case, the incident in question occurred on September 14, 1998. Plaintiff asserts that her notice of claim was filed less than one year after this date. Presumably, plaintiff is referring to a notice of claim she would have filed pursuant to Kan.Stat.Ann. § 12–105b. Section 12–105b requires that all claims against a municipality must first be presented in writing before a lawsuit can be filed. Plaintiff, however, has failed to make a part of the record any notice of claim she may have filed. Even if she had, the court finds that any such notice would not toll the statute of limitations in these circumstances. The notice claim requirements apply only to municipalities. Because these state tort claims are not against the city but are, instead, against the individual police officers, any such notice plaintiff may have given did not toll the running of

---

**3.** The court notes that, under Kansas law, the terms "false arrest" and "false imprisonment" are both used to mean "any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere." *Brown v. State,* 261 Kan. 6, 9, 927 P.2d 938, 940 (1996).

the statute of limitations as against the individual police officers. *Rockers v. Kan. Turnpike Auth.*, 268 Kan. 110, 116, 991 P.2d 889, 894 (1999). Plaintiff's claims for assault, battery, and false arrest and imprisonment are time-barred.

## 2. Malicious Prosecution

 Plaintiff asserts a claim for malicious prosecution.[4] Plaintiff was charged in Olathe Municipal Court with disorderly conduct, obstruction of justice, battery on a law enforcement officer, and fleeing arrest. She was tried and found guilty of fleeing arrest, battery on a law enforcement officer, and disorderly conduct. Plaintiff appealed her verdicts to the Johnson County District Court and was found guilty of battery on a law enforcement officer.

 Under Kansas law, the elements required to establish a malicious prosecution claim are: (1) that defendant initiated, continued, or procured the proceeding of which complaint is made; (2) that defendant in doing so acted without probable cause; (3) that defendant must have acted with malice; (4) that the proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages. *Lindenman v. Umscheid*, 255 Kan. 610, 624, 875 P.2d 964, 974 (1994). As a matter of law, plaintiff in this case cannot establish that the charges of disorderly conduct, battery on a law enforcement officer, and fleeing arrest were filed and prosecuted without probable cause because plaintiff was in fact convicted of those charges in municipal court. The conviction of an accused, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause unless the conviction was obtained by fraud, perjury or other corrupt means. *Mason v. Stock*, 955 F.Supp. 1293, 1307 (D.Kan.1997). The court already has determined that plaintiff has failed to produce evidence that her convictions were obtained by perjured testimony. Thus, plaintiff's convictions in municipal court establish that there was probable cause for the charge of disorderly conduct, battery on a law enforcement officer, and fleeing arrest. In addition, plaintiff cannot establish the fourth element, which is that the proceedings terminated in her favor, since she was, in fact, convicted of those charges.

 Obstruction of justice was the only charge of which plaintiff was not convicted. The court, however, finds that plaintiff has failed to create a genuine issue of material fact regarding whether there was probable cause for the charge. Plaintiff, who knew she was the subject of an investigation, admittedly attempted to leave the scene before the officers had completed their investigation and before the officers could serve on plaintiff a complaint for disorderly conduct. In these circumstances there existed probable cause for plaintiff's charge of obstruction of justice. Plaintiff cannot as a matter of law establish the elements for a malicious prosecution claim.

## 3. Abuse of Process

 Like plaintiff's claim for malicious prosecution, plaintiff's abuse of process claim also fails.[5] It is generally recognized that the elements essential to sustain an

---

4. In response to defendant's summary judgment motion, plaintiff declined to respond to defendants' argument on this issue. The court will, however, examine the facts in the light most favorable to plaintiff and, on that basis, determine whether the plaintiff's malicious prosecution claim survives summary judgment.

5. Plaintiff also declined to respond to defendants' summary motion on the abuse of process claim. However, as with plaintiff's malicious prosecution claim, the court will examine the facts in the light most favorable to plaintiff and, on that basis, determine whether the plaintiff's abuse of process claim survives summary judgment.

abuse of process action are: (1) that the defendant made an illegal, improper, perverted use of the process, (a use neither warranted nor authorized by the process), and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity. *Porter v. Stormont–Vail Hosp.*, 228 Kan. 641, 646, 621 P.2d 411, 416 (1980). Other than plaintiff's bare, unsupported allegations, there exists no evidence in the record that the defendants committed an act not proper in the regular prosecution of plaintiff's criminal proceeding, nor is there evidence creating an issue of fact that the defendants had an ulterior motive in the use of the regular court process. Plaintiff's abuse of process claim is dismissed.

#### 4. Tort of Outrage

 Plaintiff alleges that the defendants are liable for the tort of outrage. Under Kansas law, when the tort of outrage is asserted, two threshold requirements must be met. The court must determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery and (2) whether the emotional distress suffered by the plaintiff is of such extreme degree the law must intervene because no reasonable person should be expected to endure it. *Fusaro v. First Family Mortgage Corp.*, 257 Kan. 794, 805, 897 P.2d 123, 131 (1995). In order for conduct to be deemed sufficient to support the tort of outrage, it must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. *Taiwo v. Vu*, 249 Kan. 585, 592, 822 P.2d 1024, 1029 (1991).

Viewing the evidence in the light most favorable to the plaintiff, the court finds that the defendants' conduct in procuring plaintiff's arrest falls far short of being outrageous. Plaintiff, under investigation for disorderly conduct, had been instructed that she was not free to leave and acknowledged that she was aware of that fact. Plaintiff proceeded to phone several individuals, asking them to come pick her up. Upon seeing a vehicle she believed to be driven by one of these individuals, plaintiff motioned to the vehicle and said to the officer, "see ya." As plaintiff walked away, Livengood reasonably perceived that plaintiff was attempting to flee and tackled plaintiff to the ground. Neither Livengood's conduct, nor the conduct of Alton or Vogelsberg (assuming they were involved in carrying plaintiff to her car), can be deemed so outrageous and so extreme that a reasonable member of the community would regard the conduct as utterly intolerable and beyond the bounds of decency in a civilized community. Plaintiff's outrage claim fails as a matter of law.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. 126) is granted in its entirety. This case is hereby dismissed.