(222 P.3d 507)
No. 100,648

DANIEL J. STECHSCHULTE, JR., SATU S.A. STECHSCHULTE, and THE DANIEL J. STECHSCHULTE, JR., REVOCABLE TRUST, *Appellants*, v. A. DRUE JENNINGS, A. DRUE JENNINGS REVOCABLE TRUST DATED OCTOBER 31, 2002, EMILY A. (GOLSON) JENNINGS, and PHB REALTY COMPANY, L.L.C., *Appellees*.

48

Opinion filed January 8, 2010.

*Dana P. Niceswanger, Brian J. Niceswanger,* and *Greg T. Spies,* of McDowell, Rice, Smith & Buchanan, P.C., of Overland Park, for appellants.

*Heber O. Gonzalez,* of Kansas City, Missouri, *Andrew M. DeMarea,* of Overland Park, and *R. Dan Boulware,* of St. Joseph, Missouri, all of Polsinelli Shughart, P.C., for appellees A. Drue Jennings and the A. Drue Jennings Revocable Trust.

*Alan E. Streit,* of Larson & Blumreich, Chartered, of Topeka, for appellees Emily A. Jennings and PHB Realty Company, L.L.C.

Before BUSER, P.J., MARQUARDT and CAPLINGER, JJ.

CAPLINGER, J.: In this appeal, Daniel J. Stechschulte, Jr., Satu S.A. Stechschulte, and the Daniel J. Stechschulte, Jr., Revocable Trust (collectively the Stechschultes) challenge the district court's grant of summary judgment in favor of A. Drue Jennings and the A. Drue Jennings Revocable Trust dated October 31, 2002 (collectively, Jennings), on the Stechschultes' claims of fraud, negligent misrepresentation, and breach of contract relating to the sale of Jennings' residence to the Stechschultes.

The Stechschultes also appeal the district court's grant of summary judgment in favor of Jennings' agent in the sale of his home, Emily A. (Golson) Jennings, and PHB Realty Company, L.L.C. (PHB Realty), on the Stechschultes' claims of negligent misrepresentations and violations of the Kansas Consumer Protection Act, (KCPA), K.S.A. 50-623 *et seq.* Finally, the Stechschultes appeal the district court's denial of their motion to amend to add punitive damages claims against Jennings and Golson.

For reasons fully detailed below, we reverse and remand the district court's grant of summary judgment to Jennings on the Stechschultes' claims of fraud, negligent misrepresentation, and breach of contract, but we affirm the grant of summary judgment to Golson and PHB Realty on all claims against them. Finally, we affirm the district court's denial of the Stechschultes' motion to amend to add a claim for punitive damages against Jennings, while we find the Stechschultes' appeal of the denial of their motion to amend to add a punitive damages claim against Golson to be moot.

### Factual and procedural background

Because the district court granted summary judgment in favor of the defendants on all of the Stechschultes' substantive claims, the following factual statement views the evidence in the light most favorable to the Stechschultes, the parties opposing the motions.

In May 1998, Jennings purchased a residence (the home) under construction in Leawood. He began residing in the home in October 1998. Nearly 4 years later, in August 2002, and again in January 2003, Jennings contacted the builder of the home, William Brimacombe, regarding water leaks in the home. Brimacombe visited the home on both occasions and observed water stains in the home, including a stain on the living room ceiling in August 2002. Brimacombe, along with a roofer, inspected the roof and flashing for leaks but found no problems and advised Jennings to have the windows checked.

Jennings contacted the window subcontractor, Morgan-Wightman Supply company, who in turn hired Excel Window & Door, Inc. (Excel), to inspect the windows. Chris Whorton, Excel's owner and president, as well as other Excel employees, made eight visits to the home between August 2002 and September 2004 to evaluate leaks and/or repair windows in the home. During a visit by Whorton in August 2002, Jennings told Whorton that he had noticed water leaks all over the home and pointed out three areas he believed had experienced the worst leaks. During this visit, Whorton observed water stains at different locations in the home, as well as dirt stains where water had been carried into the home.

During another visit to the home by Whorton, Jennings pulled back a section of carpet and pointed out water stains extending approximately 2 feet from a window, as well as a separate stain several feet away from the window.

Excel performed two water tests on the home, one in August 2002 and another in September 2003. Jennings was present during both tests. Several of the water entry points were "undetermined" after water testing on the home.

After the August 2002 testing, Whorton recommended to Jennings that some of the exterior trim be pulled off the home to attempt to find the sources of the water problems. Whorton also told Jennings he could have the windows caulked but it would be only a temporary, or "Band-Aid," solution. Jennings elected to have the windows caulked.

In September 2002, Jennings paid Excel $2,650 to caulk all of the windows and doors in the home and to caulk between the cedar and stucco exterior and between the cedar and the doors and windows. The warranty on the home had expired in 1999, and the work performed was not performed under warranty.

In May 2003, Jennings hired and paid a painter to paint the area on the living room ceiling and trim where water had leaked the prior year.

In October 2003, Jennings discovered a leak in the loft window and again summoned Brimacombe. After Brimacombe and a roofer examined the roof and flashing over the loft and found no problems, Excel was again notified and conducted water testing.

When Whorton visited the home in September 2003, Jennings was adamant that all of the windows in the home were defective and needed to be replaced. Whorton advised Jennings that he would pass Jennings' wishes on to the window subcontractor, Morgan-Wightman, but that it was not up to Whorton whether the windows would be replaced. According to Whorton, neither he nor any Excel employee made any repairs to the windows in September 2003.

According to Jennings, after the September 2003 testing, the corners of the weather stripping in all of the windows were repaired or sealed at no cost to Jennings. However, Jennings did not indicate

who performed these repairs. Further, Jennings indicated that because he did not pay for the September 2003 repairs, he possessed no documents to verify those repairs.

Sometime in 2004, a vapor seal failed in a bathroom window in the home. According to Jennings, the window was eventually replaced by Excel and/or Morgan-Wightman at no cost to Jennings.

### The Sale of the Home

In February 2005, Jennings listed his residence in Leawood for sale. Jennings' fiancée, Emily Golson, with PHB Realty Company, LLC, was the listing agent for the home. Jennings and Golson were married sometime in April 2005, and Golson changed her surname to Jennings.

In connection with the sale, Jennings completed and signed a form entitled "Seller's Disclosure and Condition of Property Addendum" (the disclosure). In Section 7 of the disclosure, entitled "STRUCTURAL, BASEMENT AND CRAWL SPACE ITEMS," Jennings represented in response to question 7(d) that there had been "No" water leakage or dampness in the house, crawl space, or basement. In response to question 7(i), Jennings represented that there had been "No" repairs or other attempts to control the cause or effect of any problem described in Section 7, including water leakage or dampness in the home.

Had Jennings responded affirmatively to any of the questions in Section 7, he would then have been required to respond in the space provided after the question at the end of Section 7:

"If any of the answers in this section are 'Yes', explain in detail. When describing repairs or control efforts, describe the location, extent, date, and name of the person who did the repair or control effort and attach any inspection reports, estimates or receipts: _____."

In Section 14, "OTHER MATTERS," Jennings represented that he was not "aware of any general stains or pet stains to the carpet, the flooring, or sub-flooring.

Again, if Jennings had responded "Yes," he would have been required to explain his response "in detail" at the end of Section 14.

Prior to Jennings' signature line, the disclosure statement required Jennings to:

"Disclose any material information and describe any significant repairs, improvements or alterations to the property not fully revealed above. If applicable, state who did the work. Attach to this disclosure any repair estimates, reports, invoices, notices or other documents describing or referring to the matters revealed herein."

In the space provided after this question, Jennings wrote: "Several windows leaked after construction; full warranty repairs were performed, and correction is complete."

Jennings signed and dated the disclosure February 28, 2005. Underneath Jennings' signature, the disclosure contained a section entitled "Buyer's Acknowledgment and Agreement" (the acknowledgment), which provided:

"1. I understand and agree that the information in this form is limited to information of which SELLER has actual knowledge and that SELLER need only make an honest effort at fully revealing the information requested.

"2. This property is being sold to me without warranties or guaranties of any kind by SELLER or BROKER(S) or agents concerning the condition or value of the Property.

"3. I agree to verify any of the above information, and any other important information provided by SELLER or BROKER (including any information obtained through the multiple listing service) by an independent investigation of my own. I have been specifically advised to have the property examined by professional inspectors.

"4. I acknowledge that neither SELLER nor BROKER is an expert at detecting or repairing physical defects in the property.

"5. I specifically represent that there are no important representations concerning the condition or value of the property made by SELLER or BROKER on which I am relying except as may be fully set forth in writing and signed by them."

In April 2005, Daniel and Satu Stechschulte toured Jennings' home with their own agent, and on April 5, 2005, the couple signed a contract to purchase the home. The Stechschultes signed and dated the buyers' acknowledgment in the disclosure statement on April 5, 2005.

The Stechschultes hired a professional inspection company to perform a general inspection of the home. The inspection revealed no water intrusion or damage issues, and the Stechschultes closed

on the home on June 8, 2005. The home was titled in the name of the Daniel J. Stechschulte, Jr., Revocable Trust.

On July 3, 2005, heavy rains fell in the Kansas City area. The Stechschultes had not yet moved into the home, but they went to the home the following morning. There, they found extensive water infiltration, including a 6 to 8-foot pool of water in front of a basement window and water running down the wall in front of the window; water running down from a basement light switch; water running down the sides of a sliding glass door in the living room and pools of water nearby; water in one of the windows in the master bedroom; and water dripping from a window sill in the hearth room.

The Stechschultes contacted and met with Jennings at the home, showing him the multiple sites of water intrusion. The Stechschultes requested to rescind the contract, but Jennings refused and indicated one of the reasons for his refusal was that the proceeds from the sale were already invested in his and Golson's new home. Jennings contacted his homeowner's insurance company to determine coverage for the claims, but coverage was denied.

The Stechschultes then had the home evaluated by a builder, Enrico Forner, who observed a pool of water on the ceramic tile in the basement, as well as evidence of water leakage in the master bedroom, loft, and hearth room. Forner observed that the painting and recaulking in the home appeared to be "fresh"— probably within 6 months prior to the sale. The Stechschultes also discovered a can of paint in the basement which was labeled as expressly formulated to conceal water damage.

In August 2005, the Stechschultes had Thermoteknix perform infrared scans in the home, which revealed extensive water damages. In September 2005, the Stechschultes had an environmental fungal survey performed, which showed elevated mold levels in the home.

### The Petition

On March 21, 2006, the Stechschultes filed a petition against Jennings and the former titleholder of the home, the "A. Drue Jennings Revocable Trust dated October 31, 2002," alleging fraud

and negligent misrepresentation. Specifically, the petition alleged that Jennings made false representations in the disclosure, failed to disclose material defects, failed to provide repair records related to window leaks, and failed to reveal that Jennings had painted over water stains. The Stechschultes later added a breach of contract claim based on Jennings' failure to attach documents to the disclosure relating to the window repairs.

The petition also asserted claims of negligent misrepresentation and violations of the KCPA, K.S.A. 50-623 *et seq.*, against Golson and PHB Realty.

The petition specifically alleged that Golson assisted Jennings in completing the disclosure and in providing Jennings' false representations to the Stechschultes, that she failed to exercise reasonable care in obtaining and communicating information to the Stechschultes, and failed to investigate Jennings' statements and representations in the disclosure. The Stechschultes further alleged Golson and PHB Realty violated the KCPA by engaging in deceptive acts and practices in connection with the sale of the home.

Additionally, Jennings asserted several third-party indemnity claims, all of which were ultimately dismissed by the district court with the exception of a claim against the builder, William Brimacombe, for negligence and breach of implied warranty. However, this claim was rendered moot by the district court's final ruling, and the court's rulings on the third-party claims are not at issue in this appeal.

## Motion to Amend to Add Punitive Damages Claim

During the course of the litigation, the Stechschultes moved to amend their petition to add a claim for punitive damages against Jennings and Golson, alleging they acted willfully and wantonly by selling the home with knowledge of extensive water intrusion problems and failing to disclose or actively concealing those problems from the Stechschultes.

Following a hearing on August 22, 2007, the district court denied the Stechschultes' motion to add a punitive damages claim. The court noted that the previous district judge assigned to the case

had denied a prior motion to amend to add a punitive damages claim, and the court found no basis to alter that ruling. This ruling was finalized in a journal entry dated September 17, 2007.

In a subsequent hearing on December 31, 2007, however, the Stechschultes orally renewed their motion to amend to add a claim of punitive damages against Jennings. The court again denied the motion but noted that it would be open to reconsidering its ruling depending upon "how the evidence comes out at trial." This ruling was finalized, along with several other rulings, in an order dated May 19, 2008. The Stechschultes have appealed from that decision as well as the September 17, 2007, journal entry denying their motion to amend.

### Jennings' Motions for Summary Judgment

Following discovery, all of the parties filed cross-motions for summary judgment. Jennings' first motion, filed in November 2007, indicated he sought summary judgment on "Counts I and II—Fraudulent Inducement and Negligent Misrepresentation, for the lack of any evidence of justifiable reliance, an essential element of their claims." In support of the motion, Jennings relied upon *Brennan v. Kunzle*, 37 Kan. App. 2d 365, 154 P.3d 1094, *rev. denied* 284 Kan. 945 (2007), and *McLellan v. Raines*, 36 Kan. App. 2d 1, 140 P.3d 1034 (2006). Specifically, he argued that these cases required the court to find that pursuant to Section 5 of the buyers' acknowledgment, the Stechschultes waived their right to assert fraud and negligent misrepresentation claims when they failed to specify in writing any "important representations concerning the condition or value of the property" on which they were relying.

Jennings further argued that plaintiffs' Count II, negligent misrepresentation, was barred by the economic loss doctrine. Finally, Jennings sought summary judgment on Count III, breach of contract, based on the doctrine of merger.

Jennings also filed an "Alternative Motion for Summary Judgment on Breach of Contract" in which he argued the contract claims, like the negligent misrepresentation claims, were barred by Section 5 of the buyers' acknowledgment.

Additionally, Jennings filed an "Alternative Motion for Summary Judgment on the Issue of Standing," arguing the Stechschultes lacked standing and/or were not the real parties in interest.

At the close of the December 31 hearing on the pending motions, the district court initially granted Jennings' motion for summary judgment on the plaintiffs' negligent misrepresentation claim and also granted his alternative motion for summary judgment on plaintiffs' breach of contract claim. The court agreed with Jennings that under *Brennan* and *McLellan*, the Stechschultes waived their right to make such claims when they signed the buyers' acknowledgment in the disclosure statement.

However, the district judge initially denied Jennings' motion for summary judgment on the fraud claim, finding:

"So, as I understand it then, we are going to have a trial on the fraud claims and I find that there is more than one conclusion can be drawn from these facts in this case, that's whether or not the seller disclosed everything they knew about the material defects in the house. And whether or not those could have been discovered by reasonable inspection, I am going to find that without everything disclosed, there cannot be a reasonable inspection, and, so, the information that the inspector may have had that the plaintiffs had looking at the case would fall right into the same argument in *Brennan*, is that you can't make a reasonable inspection without full disclosure of all knowledge with regard to the history of that — of the other inspections in the house, the problems in that house, the observations that the seller had with regard to leaks and whatever remedies were used to try to fix the leaks."

After the court's oral ruling, Jennings' counsel orally requested clarification as to whether the court's ruling encompassed all of the plaintiffs' potential fraud claims, particularly the fraud by silence claim. The court pointed out that a pretrial order had not been prepared in the case, which presented a "problem" in terms of defining the specific fraud claims. Stechschultes' counsel then asserted that the plaintiffs were claiming three types of fraud: fraudulent inducement, fraud by silence, and fraudulent concealment.

Ultimately, the district court permitted the parties to file cross-motions for summary judgment on the Stechschultes' fraud by silence claim. After a hearing on March 26, 2008, the court granted Jennings' motion for summary judgment on the fraud by silence

claim, which the court characterized as the "sole remaining claim" in this case.

In a journal entry of summary judgment dated May 19, 2008, the court reiterated its various rulings on Jennings' summary judgment motions, including that it had recently granted summary judgment on the Stechschultes' remaining claim of fraud by silence. Further, the court reiterated its earlier grant of summary judgment on the Stechschultes' claims of negligent misrepresentation and breach of contract based on the buyer acknowledgment and its denial of Jennings' motion for summary judgment on standing. Finally, the court denied Jennings' summary judgment motions on "the other grounds moved in defendants' written motion briefing."

The Stechschultes appeal from the district court's "Journal Entry of Summary Judgment" filed April 23, 2008, as well as the "Journal Entry of Summary Judgment" filed May 19, 2008.

### Golson's and PHB Realty's Motions for Summary Judgment

Golson and PHB Realty moved for summary judgment on several grounds, including the Stechschultes' waiver of reliance in the acknowledgment. In an order dated December 4, 2007, the district court agreed that by signing the acknowledgment, the Stechschultes waived reliance on any misrepresentations made by Golson. Therefore, the court granted summary judgment in favor of Golson and PHB Realty on the Stechschultes' negligent misrepresentation and KCPA claims. The Stechschultes appeal from the December 4, 2007, order of the district court granting Golson's and PHB Realty's motion for summary judgment.

### Discussion

In this appeal, the Stechschultes challenge the district court's grant of summary judgment in favor of Jennings on the claims of negligent misrepresentation and breach of contract, claiming the district court misinterpreted Section 5 of the acknowledgment as a waiver of their reliance on representations made in the disclosure statement. They contend their waiver of reliance on "important representations concerning the condition or value of the property"

applied only to representations not set forth in writing and signed by the seller or the agent. Thus, they contend they did not waive reliance on representations set forth in the written disclosure statement and signed by Jennings. The Stechschultes assert this same rationale in support of their challenge to district court's grant of summary judgment in favor of Golson and PHB Realty on the negligent misrepresentation and KCPA claims.

The Stechschultes also appeal the district court's grant of summary judgment on their fraud by silence claim, arguing the district court erred in treating their fraud count strictly as a fraud by silence claim. Alternatively, they argue the district court erred in finding as a matter of law that summary judgment was appropriate on the fraud by silence claim. Finally, the Stechschultes appeal the district court's denial of their motion to amend to add a punitive damages claim against Jennings.

In his response brief, Jennings argues the district court properly interpreted Section 5 of the acknowledgment as a waiver of any representations in the disclosure statement and that summary judgment in his favor was proper on the claims of negligent misrepresentation and breach of contract. Jennings also asserts the district court properly granted summary judgment on the fraud by silence claim as a matter of law.

Alternatively, Jennings urges this court to uphold summary judgment on the negligent misrepresentation and breach of contract claims based on the lack of any material issues of controverted fact with respect to those claims. However, Jennings did not seek summary judgment on the negligent misrepresentation and contract claims on this ground. Thus, we are precluded from considering this issue on appeal. See *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007) (issues not raised before the trial court cannot be raised on appeal).

Jennings also alternatively contends summary judgment was proper on all of the claims against him because the Stechschultes lacked standing to assert any claims. Further, Jennings contends summary judgment was proper on the negligent misrepresentation claim based upon the economic loss doctrine.

However, these alternative arguments also are not properly before us. The district court denied Jennings' alternative motions for summary judgment on the issues of standing and the economic loss doctrine, and Jennings failed to cross-appeal from those adverse rulings as required by K.S.A. 60-2103(h). Accordingly, we will not address Jennings' alternative arguments. See *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008) (cross-appeal must be perfected to obtain appellate review of an adverse decision).

Golson and PHB Realty filed a joint response brief, arguing the district court properly granted summary judgment in their favor because the Stechschultes' signature on the buyers' acknowledgment precluded their reliance on any alleged misrepresentations made by Golson and PHB Realty and Golson lacked "actual knowledge" of any adverse material facts. They also argue several additional bases upon which summary judgment was appropriate on the negligent misrepresentation and KCPA claims. These additional assertions, while raised by Golson and PHB Realty in their motion for summary judgment, were not addressed by the district court in its order granting summary judgment to Golson and PHB Realty.

## I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF JENNINGS BASED UPON THE BUYERS' ACKNOWLEDGMENT.

With the exception of their challenge to summary judgment on the fraud by silence claim, the Stechschultes' primary challenge is the same with respect to the summary judgment granted to all parties on all claims. Namely, the Stechschultes contend the district court misinterpreted Section 5 of the buyers' acknowledgment to preclude their claims.

However, because the facts of this case require a different analysis depending upon the party against whom the claim is asserted as well as the nature of the claim, we have considered the claims separately below.

### A. Standards of Review

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009).

" 'An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. The disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact.' [Citations omitted.]" *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

When a plaintiff lacks evidence to establish an essential element of his or her claim, " 'there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.' " *Crooks v. Greene*, 12 Kan. App. 2d 62, 64-65, 736 P.2d 78 (1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 [1986]). Accordingly, a defendant is entitled to summary judgment if the defendant can establish the absence of evidence necessary to support an essential element of a plaintiff's case. *Klose v. Wood Valley Racquet Club, Inc.*, 267 Kan. 164, 167, 975 P.2d 1218 (1999).

To the extent resolution of this issue requires interpretation of provisions of the disclosure and acknowledgment or the legal effect of those provisions, our review is de novo. See *City of Arkansas City v. Bruton*, 284 Kan. 815, 828-29, 166 P.3d 992 (2007); *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006).

"The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.[Citation omitted.]" *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007).

However, " '[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners.' [Citation omitted.]" *City of Arkansas City*, 284 Kan. at 832-33. " 'The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.' [Citations omitted.]" *Wichita Clinic v. Louis*, 39 Kan. App. 2d 848, 853, 185 P.3d 946, *rev. denied* 287 Kan. 769 (2008).

## B. The Effect of the Buyers' Acknowledgment

The Stechschultes identify the "core issue" in this appeal as "whether the language of the Buyer's Acknowledgment can, as a matter of law, serve to release the Defendants . . . from liability for fraud, breach of contract, misrepresentation and/or violation of the Kansas Consumer Protection Act."

This core issue has been analyzed by this court in several decisions. See, *e.g.*, *Katzenmeier v. Oppenlander*, 39 Kan. App. 2d 259, 178 P.3d 66, *rev. denied* 286 Kan. 1178 (2008); *Brennan v. Kunzle*, 37 Kan. App. 2d 365, 154 P.3d 1094, *rev. denied* 284 Kan. 945 (2007); *McLellan v. Raines*, 36 Kan. App. 2d 1, 140 P.3d 1034 (2006).

In *Katzenmeier, Brennan,* and *McLellan* panels of this court interpreted a buyer's acknowledgment containing language identical to the acknowledgment signed by the Stechschultes in this case to require the buyer to create a separate writing, indicating which of the seller's representations upon which the buyer has relied or waived reliance on any representations made by the seller or agent/broker. *Katzenmeier*, 39 Kan. App. 2d at 260-68; *Brennan*, 37 Kan. App. 2d at 387-91; *McLellan*, 36 Kan. App. 2d at 7-13. Because the buyers in each of those cases had signed the acknowledgment but had not created a separate writing identifying the particular

representations relied upon, the panel in each case found the buyers could not establish an essential element of their claims, *i.e.*, justifiable reliance.

Recently, a majority of a panel of this court disagreed with the prior panels' interpretation of Section (paragraph) 5 of the buyer's acknowledgment. See *Osterhaus v. Toth*, 39 Kan. App. 2d 999, 1001-16, 187 P.3d 126, *rev. granted* 287 Kan. 766 (2008).

The *Osterhaus* majority recognized the similarities between the Osterhaus' case and *Katzenmeier, Brennan,* and *McLellan* including (1) identical language in the buyer's acknowledgment form; (2) the fact that all buyers had home inspections performed before closing; and (3) the fact that all buyers asserted similar claims after discovering post-closing water infiltration issues. *Osterhaus*, 39 Kan. App. 2d at 1007.

In concluding the buyers' claims were not precluded by the acknowledgment, the *Osterhaus* majority reasoned:

"The decisions of this court in *McLellan, Katzenmeier,* and *Brennan* held that the unambiguous language of paragraph 5 directed the buyer to indicate which representations the buyer was relying on, or to agree to rely on none of them. We disagree with the interpretation by the other panels of this court that this language is unambiguous. The disclosure statement is a writing that is signed by the seller, and there is no requirement for a separate, second document signed by the seller. If there are material misrepresentations by a seller of real property in its disclosure statement, without consideration of all the facts surrounding the sale, the buyer's signature alone does not constitute a waiver of seller's material misrepresentations." *Osterhaus*, 39 Kan. App. 2d at 1008-09.

We agree with the *Osterhaus* majority's interpretation of the buyers' acknowledgment. The unambiguous language of the acknowledgment indicates that it is a representation by the buyer that "neither the SELLER nor the BROKER" have made any "important representations concerning the condition or value of the property" on which the buyer relies, "except as may be fully set forth in writing and signed *by them.*"(Emphasis added.) Unquestionably, the context of the term "them" refers to the seller and the agent. See *Osterhaus*, 39 Kan. App. 2d at 1014-15 (Leben, J., dissenting); *Katzenmeier*, 39 Kan. App. 2d at 269-70 (Leben, J., concurring).

The seller's representations in the disclosure constitute a writing signed by the seller; thus, the acknowledgment clearly does not waive reliance on those representations. Rather, the buyers' acknowledgment precludes reliance on any other important representations made by either the seller or the agent, unless those representations have been reduced to writing and signed by the seller and/or agent.

We note that our interpretation of the acknowledgment here is consistent with our Supreme Court's interpretation of a similar acknowledgment in *Alires v. McGehee*, 277 Kan. 398, 85 P.3d 1191 (2004). There, the buyers of the residence acknowledged: " 'I state that no important representations concerning the condition of the property are being relied upon by me *except as disclosed above* or as fully set forth as follows . . . .' " 277 Kan. at 402. In that case, some basement leakage had been disclosed by the sellers in the disclosure, but numerous other water infiltration issues were not disclosed.

The *Alires* court, relying upon Judge Henry Green's dissent to the panel's majority opinion in this court, reasoned: `

"The dissent aptly noted this write-in section was for representations not mentioned in the 'above' section of the contract, the section where the McGehees disclosed the basement leakage caused by a broken pipe but not the other incidences of leakage

"The seller's disclosure form was integrated into the contract, and one of the alleged fraudulent representations was contained within the disclosure form itself. *There was no need for the Alireses to write in the representation on which they were relying because Mrs. McGehee's representation that the basement had leaked only when broken pipes needed repairing was already listed.*" (Emphasis added.) 277 Kan. at 404.

This same analysis applies here. Jennings represented in the disclosure that "several windows leaked *after construction*" and *"full warranty repairs* were performed and correction is complete." (Emphasis added.) However, discovery revealed that the home warranty expired 1 year after construction was complete, the more significant repairs were not warranty repairs, and those repairs were made approximately 4 years after construction was completed. Further, Jennings represented in another section of the

disclosure that there had been "No" water leakage or dampness in the home and "No" repairs or other attempts to control water leakage problems. While Jennings contends he believed he sufficiently disclosed the water intrusion by his subsequent disclosure that "several windows leaked after construction" and that "full warranty repairs" were performed, Jennings' intent in making these representations is a question of fact to be considered in light of all of the information contained in the disclosure and other facts surrounding the transaction.

## C. The Limited Issue Raised in Jennings' Summary Judgment Motion

At this juncture, it is important to consider the procedural stature of this case at the time summary judgment was granted. The district court was asked to decide whether summary judgment was appropriate on the negligent misrepresentation and breach of contract claims only as to whether the buyers' acknowledgment precluded reliance on these claims as a matter of law. The district court was not asked to determine whether summary judgment was proper on these claims based upon the material, uncontroverted facts pertaining to the representations or the buyers' reliance on the representations.

In this regard, this case varies significantly from *Alires*. That case initially came to our court on an appeal by the sellers following a bench trial which resulted in a verdict for the buyers on their claims of fraudulent misrepresentation. This court reversed the judgment, and the buyers were granted review in the Supreme Court. Thus, when our Supreme Court ultimately considered the facts of the case, it did so under a standard of review which required it to consider whether the district court's findings of fact were supported by substantial competent evidence and were sufficient to support the district court's conclusions of law. 277 Kan. at 403; see also *Osterhaus*, 39 Kan. App. 2d at 1006-10, 1013-14 (having found the acknowledgment did not bar the buyer's claims, this court proceeded to consider and find material facts precluded summary judgment, including whether the sellers' misrepresentations were

discoverable through a reasonable inspection and whether the buyer reasonably relied upon the representations).

In *Alires*, after the court determined the disclosure did not preclude the buyers' reliance on the misrepresentations contained in the disclosure, it then proceeded to consider whether the buyers reasonably relied upon the representations in light of other circumstances surrounding the transaction. In particular, the court considered language in the disclosure which provided that if inspections were *not* performed, the buyer was bound by whatever information would have been apparent had an inspection been performed. See *Alires*, 277 Kan. 398, Syl. ¶ 5. Ultimately, the court concluded:

> "Under the facts of this case, the buyer of real estate could not reasonably rely upon representations of the seller when the truth or falsity of the representations would have been revealed by an inspection of the subject property and the misrepresentations were made prior to or as part of the contract which the buyer contracted for the right to inspect, agreed that the statements of the sellers were not warranties and should not replace the right of inspection, declined inspection, and waived any claims arising from defects which would have been revealed by an inspection." 277 Kan. at 411-12.

Here, while we have found the Stechschultes' negligent misrepresentation and breach of contract claims are not precluded by the buyers' acknowledgment, we need not consider further factual issues because they were not asserted by Jennings as a basis for summary judgment in the district court. Thus, we conclude the district court erred in granting Jennings' summary judgment on the Stechschultes' claims of negligent misrepresentation and breach of contract.

## II. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF JENNINGS ON THE STECHSCHULTES' FRAUD BY SILENCE CLAIM.

As discussed, at the hearing on Jennings' motion for summary judgment, the district court announced it intended to find that genuine issues of material fact precluded Jennings' motion for summary judgment on Count I, which the Stechschultes identified sim-

ply as a fraud claim. However, upon further argument of the parties, the court determined that Count I arguably asserted three fraud claims: fraud by silence, fraud by concealment, and fraudulent inducement. Thus, the court neither granted nor denied Jennings' motion with respect to the fraud claim.

Instead, the court and the parties discussed the need for a pretrial order to further define the fraud claims and the possibility of subsequent briefing on the fraud by silence claim. The record contains a transcript of the subsequent pretrial conference, and a proposed pretrial order. At that conference the district court again indicated that the fraud claim appeared to include elements of both affirmative fraud and fraud by silence, and the proposed pretrial order indicates the same.

However, the record does not contain a final pretrial order, and it does not appear that one was ever entered. Further, although the record contains no indication of such a ruling, the parties indicate in briefing that the district court elected at some point to treat the fraud claim solely as a fraud by silence claim and to permit the parties to file cross-motions for summary judgment on that claim. The court ultimately granted Jennings' motion for summary judgment on the fraud by silence claim, characterizing it as the "sole remaining claim."

While the district court's rationale for treating the fraud claim solely as a fraud by silence claim is unclear, it is apparent that the district court patterned its analysis of the fraud by silence claim in this case on the treatment of a similar claim in *Brennan*, 37 Kan. App. 2d 365. In *Brennan*, a panel of this court affirmed summary judgment on the buyers' claims of fraudulent and negligent misrepresentation based on its determination that the claims were precluded by the buyers' waiver of reliance in the acknowledgment. 37 Kan. App. 2d at 387-90. However, the court took up the issue of whether summary judgment was appropriate on the fraud by silence claim, explaining that although the district court had granted summary judgment only on the fraudulent misrepresentation claim, it was "apparent" to the panel that Count I of the buyers' counterclaim included two causes of action: fraud by silence and negligent misrepresentation. 37 Kan. App. 2d at 377.

The court further explained that the elements of fraud by silence were different than the elements of fraudulent misrepresentation. 37 Kan. App. 2d at 377-79.

The fraud by silence claim in *Brennan* was based upon the sellers' failure to disclose to the buyers a written engineer's report that would have alerted the buyers to significant concerns regarding construction of the home and the need for additional destructive testing to determine the source of leaks. Presumably, the disclosure of the report in *Brennan* was not required by the disclosure statement. Otherwise, it is unclear how the panel could have considered the fraud by silence claim independently of the other fraudulent misrepresentation claims, which it had determined were barred by the acknowledgment.

This case is distinguishable from *Brennan* in two important respects. First, the Stechschultes' petition clearly alleged affirmative fraud claims. The petition contains multiple paragraphs of factual allegations alleging Jennings made material misrepresentations or omissions in the disclosure statement which induced the Stechschultes to purchase the home.

Further, unlike in *Brennan,* the factual basis for the fraud by silence claim here was based on the failure to disclose information which would have been available to the buyers had misrepresentations not been made in the disclosure. Specifically, the fraud by silence claim was based on Jennings' failure to disclose that Whorton had recommended destructive testing in August 2002 in order to determine the source of water leaks. Clearly, had Jennings answered "Yes" instead of "No" to the questions in Section 7 regarding whether he was aware of any water leakage or dampness in the house, he would have been required to explain in detail the nature of the leakage or dampness, as well as to disclose the repairs made. Further, Jennings would have been required to identify the location, extent, and date of any repairs, the "name of the person who did the repair or control effort," and to "attach any inspection reports, estimates, or receipts." This disclosure would have required Jennings to disclose the extent, date, and nature of the repairs performed by Excel. This information, in turn, would have provided the buyers the information needed to obtain further in-

formation from Excel representatives regarding the testing done and the nature of their recommendations.

Further, as the Stechschultes point out, the disclosure statement in this case contained a representation by Jennings that he was disclosing "*all* material defects, conditions and facts of which seller is aware which may materially affect the value of the Property." Thus, if Jennings was aware of information regarding material defects, conditions, or facts which might materially affect the value of the home and he failed to disclose any or all of that information, the disclosure statement contained affirmative misrepresentations.

Because the Stechschultes' petition contained numerous allegations of affirmative fraud with respect to Jennings' misrepresentations in the disclosure statement, the district court erred in treating Stechschultes' fraud claim solely as a claim of fraud by silence. Thus, we find the district court erred in granting summary judgment on the Stechschultes' fraud claim.

## III. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF GOLSON AND PHB REALTY.

The Stechschultes filed two claims against Golson and PHB Realty: negligent misrepresentations and violations of the KCPA. The district court granted summary judgment on both claims, finding that by their signature on the acknowledgment form, the Stechschultes waived reliance on any misrepresentations made by Golson in the disclosure statement which were not reduced to writing and signed by the seller and the agent.

### A. The Negligent Misrepresentation Claims

On appeal, the Stechschultes generally argue that the buyers' acknowledgment did not bar their claims of negligent misrepresentation. However, they fail to distinguish the effect of the acknowledgment on their claims of negligent misrepresentation against Jennings as opposed to their claims against Golson and PHB Realty.

As we have interpreted the acknowledgment, the seller's representations in the disclosure constitute a writing signed by the

seller and, thus, the buyers' acknowledgment clearly does not waive reliance on any misrepresentations by the seller in the disclosure. Rather, the acknowledgment precludes reliance on any *other* important representations made by *either* the seller or the agent, unless those representations have been reduced to writing and signed by the seller and the agent.

Thus, because the disclosure was signed by Jennings, the acknowledgment did not preclude reliance upon representations made by Jennings in the disclosure. However, it is undisputed that the seller's disclosure was not signed by Golson, and therefore the acknowledgment did preclude claims against Golson to the extent that they were based upon representations made in the disclosure. Further, because there were no *other* important representations identified as having been made by Golson which were reduced to writing and signed by the seller and the agent, the Stechschultes' reliance upon any misrepresentations against Golson and PHB Realty are precluded by the acknowledgment.

Our analysis here is supported by *Hamtil v. J.C. Nichols Real Estate*, 22 Kan. App. 2d 809, 923 P.2d 513 (1996). There, the buyers of a home brought negligence and negligent misrepresentation claims against the sellers' agents and their real estate company alleging the agents made "false statements about the condition of the house." 22 Kan. App. 2d at 811. Judge Gernon, writing for the panel, found the buyers waived any reliance upon misrepresentations allegedly made by the agents based upon their acknowledgment in the disclosure statement, which provided in relevant part: "I state that no important representations concerning the condition of the property are being relied upon by me except as disclosed above or as fully set forth as follows: _____." 22 Kan. App. 2d at 811, 814.

The *Hamtil* court reasoned that the acknowledgment "contained clear language allowing the [buyers] to list any representations upon which they were relying and blank spaces for the representations to be listed." 22 Kan. App. 2d at 813-14. However, the buyers failed to specify any such representations. As a result, the panel reversed the district court's order denying summary judg-

ment to the agents and their real estate company. 22 Kan. App. 2d at 814.

Similarly, in this case, the buyers specifically represented that there were "no important representations concerning the condition or value of the property made by SELLER or BROKER" on which they were relying "except as may be fully set forth in writing and signed by them." And although the buyers now assert negligent misrepresentation claims against Golson and PHB Realty, they fail to identify any representations made by Golson which were set forth in writing and signed by Golson.

Finally, we note that Golson also attempts to rely upon the panel's statement in *Hamtil* that real estate agents or brokers may "protect themselves from negligent misrepresentation actions by disclaiming knowledge of the property's defects and having a buyer or seller acknowledge such disclaimer." 22 Kan. App. 2d at 814. However, this statement appears to be dicta, in that the facts of *Hamtil* do not suggest that the agents disclaimed knowledge of any defects in the property. Instead, the buyers' acknowledgment contained a provision indicating the buyers purchased the property "without warranties or guarantees of any kind by the seller or any realtor concerning the condition or value of the property." 22 Kan. App. 2d at 811. Further, the buyers acknowledged that "neither seller nor any realtor involved in this transaction is an expert at detecting or repairing physical defects in the property." 22 Kan. App. 2d at 811.

While these statements verify that the agents in *Hamtil* did not guaranty or warranty the property and that they were not "experts" in detecting or repairing physical defects, they do not constitute a disclaimer by the agent, which presumably would require a separate writing by the agent which was signed by either the buyer or the seller, as anticipated in *Hamtil*. Rather, it appears the basis for the panel's decision in *Hamtil* was solely the buyers' acknowledgment that they were not relying upon any representations made by the agents. 22 Kan. App. 2d at 814.

Similarly, in this case, the record does not reveal that Golson disclaimed any knowledge of the property's defects or that the buyers agreed to such a disclaimer. Instead, Golson must rely upon

the buyers' acknowledgment that she made "no important representations concerning the condition or value of the property" on which the buyers were relying except those fully set forth in writing and signed by Golson.

Because the Stechschultes identified no representations made by Golson which were set forth in writing and signed by her, they are precluded from establishing that they relied upon any negligent misrepresentations made by Golson. See *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604-05, 876 P.2d 609 (1994) (identifying elements of negligent misrepresentation claim in residential sales transaction, including justifiable reliance upon misrepresentation). Thus, the district court did not err in granting summary judgment to Golson and PHB Realty on these claims of negligent misrepresentation.

## B. The KCPA Violations

The Stechschultes also alleged that Golson and PHB Realty violated the KCPA by engaging in deceptive acts and practices in connection with the sale of the home. Significantly, although the district court granted summary judgment on both the negligent misrepresentation and KCPA claims based upon the Stechschultes' waiver of reliance, on appeal the Stechschultes do not distinguish their argument regarding the effect of the acknowledgment with respect to each of these claims. Instead, on appeal, the Stechschultes maintain that the acknowledgment did not preclude their claims against Golson and PHB Realty for the same reason it did not preclude their claims against Jennings.

However, we have determined that although the language of the acknowledgment does not preclude the Stechschultes from relying upon Jennings' written representations in the disclosure, it does preclude their reliance on any alleged representations made by Golson, since any such representations were not in writing and signed by Golson. Thus, because we have been presented with no basis to reverse summary judgment in favor of Golson and PHB Realty on the KCPA claims based upon the waiver, we affirm the grant of summary judgment on these claims as well.

Moreover, here the Stechschultes only generally alleged that Golson and PHB Realty violated provisions of the KCPA, K.S.A. 50-623 *et seq.*, by "engaging in deceptive acts and practices in connection with the sale of the Home, all as more fully detailed herein." It is unclear from the petition which of Golson's actions constituted deceptive acts and practices.

Even if we assume that the Stechschultes' KCPA claims were based on K.S.A. 50-626(b)(3), to avoid summary judgment they were required to present prima facie evidence that: (1) Golson willfully failed to state a material fact; (2) or Golson willfully concealed, suppressed, or omitted a material fact; and (3) the Stechschultes were "aggrieved" by the violation. See K.S.A. 50-626(b)(3); K.S.A. 50-634(a).

Significantly, the Stechschultes have not asserted a claim of fraudulent misrepresentation against Golson, and we find no support in the record for any assertion that Golson acted willfully or wantonly in failing to state a material fact or in concealing, suppressing, or omitting a material fact. Under these circumstances, we find the district court did not err in granting summary judgment in favor of Golson and PHB Realty on the Stechschultes' claims of negligent misrepresentation and violations of the KCPA.

## IV. THE DISTRICT COURT DID NOT ERR IN DENYING THE STECHSCHULTES' MOTION TO AMEND THEIR PETITION TO ADD PUNITIVE DAMAGES CLAIMS.

Finally, the Stechschultes argue the district court erred by denying their motion to amend their petition to add punitive damages claims against Jennings and Golson. Generally, the Stechschultes suggest that claims for punitive damages were appropriate because they "provided substantial evidence of independent torts, i.e., fraudulent procurement, affirmative fraud, fraud by silence and concealment, negligent misrepresentations and violation of the Kansas Consumer Protection Act."

Jennings contends the motion was properly denied because the Stechschultes' claims arose out of contract and, alternatively, be-

cause there was no evidence that he acted in a willful, wanton, or malicious manner.

In light of our ruling affirming summary judgment in favor of Golson, the Stechschultes' appeal of the denial of their motion to amend with respect to Golson is moot.

With respect to Jennings, the Stechschultes' motion to amend to add a claim of punitive damages initially was denied by the first district judge assigned to the case. The Stechschultes later renewed their motion and the newly assigned district judge denied the motion, citing a lack of evidence of willful and wanton conduct. Finally, prior to the district court's ruling on the fraud by silence claim, the Stechschultes renewed their motion to add a claim of punitive damages against Jennings. The district court affirmed its previous denial of the motion but indicated the court might reconsider the motion if the fraud claim was tried, depending upon "how the evidence comes out at trial."

Pursuant to K.S.A. 60-3703, the Stechschultes were not permitted to include punitive damages claims in their petition. Instead, they were required to seek to amend their pleadings to add those claims. The district court was then permitted to allow the filing of an amended pleading claiming punitive damages only if the plaintiffs established a probability that they would prevail on their claims pursuant to K.S.A. 60-209 on the basis of the supporting and opposing affidavits presented. Finally, although K.S.A. 60-3703 requires that the motion seeking to add a punitive damages claim must be filed on or before the date of the final pretrial conference, it does not prohibit a plaintiff from renewing the motion if it has been previously timely filed.

Further, in determining whether a probability exists that a plaintiff will prevail on a punitive damages claim at trial, the district court must take into account the "clear and convincing" standard which the plaintiff eventually will be required to prove. *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 801-02, 897 P.2d 123 (1995). Specifically, the trial court must consider the evidence presented in the opposing affidavits as well as other evidence in a light most favorable to the party moving for the amendment, and if the evidence is of sufficient caliber and quality to allow a rational fact-

finder to find that the defendant acted towards the plaintiff with willful conduct, wanton conduct, fraud, or malice, the trial court shall allow the amendment. 257 Kan. at 802.

We review the district court's decision to deny plaintiffs' motion to amend to add punitive damages claims for an abuse of discretion. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689, 984 P.2d 719 (1999); *Fusaro*, 257 Kan. at 804. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. In other words, judicial discretion is abused when no reasonable person would take the view adopted by the trial court. 257 Kan. at 804.

Here, on the final occasion the district court denied the Stechschultes' motion to add a claim for punitive damages, the only remaining claim was a claim for fraud by silence. Having reviewed the evidence, we cannot say that no reasonable person would have taken the view adopted by the district court here, and we hold the district court did not abuse its discretion in denying the Stechschultes' motion to amend to add a claim of punitive damages against Jennings. However, in light of our ruling today reversing the district court's grant of summary judgment against Jennings on the Stechschultes' fraud claim, the Stechschultes will have an opportunity to renew their motion for leave to add a punitive damages claim, should the fraud claim eventually proceed to trial.

In summary, we reverse and remand the district court's grant of summary judgment to Jennings on the Stechschultes' claims of fraud, negligent misrepresentation, and breach of contract, but we affirm the grant of summary judgment to Golson and PHB Realty on all claims against them. Finally, we affirm the district court's denial of the Stechschultes' motion to amend to add a claim of punitive damages against Jennings, while we find the Stechschultes' appeal of the denial of their motion to amend to add a punitive damages claim against Golson is moot.

Affirmed in part, reversed in part, and remanded.